# The Chicago and Alton Railroad Company

## *v.*

## Margaret House.

### Opinion filed April 21, 1898.

1. Fellow-servants—*defendant has burden of proving relation of fellow-servants.* In an action against a railroad company for causing the death of the plaintiff's intestate through the negligence of one of its servants, the defendant has the burden of proving such servant to be a fellow-servant with the deceased, although the declaration contains a negative allegation.

2. Same—*master is liable if his own negligence contributes to injury.* The fact that the negligence of a fellow-servant contributes to an injury received by a servant while exercising due care, does not relieve the master from liability for the injury if the master's negligence, or that of another servant not a fellow-servant, also contributed thereto.

3. Master and Servant—*master should use reasonable care to prevent injury to servants.* A master should use reasonable care to prevent injury to his servants by accident while properly performing the duties for which they were employed.

4. Same—*servant does not assume all risks incident to employment.* A servant assumes only such risks incident to his employment as are usual and ordinary and which remain so incident after the master has taken reasonable care to prevent or remove them, or such extraordinary risks as are so obvious and which expose him to danger so imminent that an ordinarily prudent person, in anticipation of probable injury, would not enter or remain in the employment.

5. Railroads—*the providing of switch lights is reasonable precaution against injury.* Providing a switch light so attached that engineers of all trains approaching the switch in the night time may tell whether it is open or closed, in time to stop or slow up, is such a reasonable precaution as to warrant a jury in finding that the failure of a railroad company to provide such light is negligence.

6. Same—*effect of fireman's knowledge that a switch had no light.* Where a fireman on a passenger train is killed through the negligence of the crew of another train in leaving open, in the night time, a switch which had no light, the fact that the fireman knew that for over a year the railroad company had not kept a light on the switch does not warrant the overruling of a finding by a jury that the deceased was not negligent in remaining in service.

*Chicago and Alton Railroad Co.* v. *House,* 71 Ill. App. 147, affirmed.

| | |
|---|---|
| 172 | 601 |
| 176 | 429 |
| 172 | 601 |
| 178 | 355 |
| 172 | 601 |
| 82a | 115 |
| 172 | 601 |
| 182 | 541 |
| 172 | 601 |
| 190 | [1]599 |
| 95a | [2] 59 |
| 172 | 601 |
| 197 | [1]446 |
| 172 | 601 |
| 200 | [4]108 |
| 201 | [4]207 |
| 172 | 601 |
| 104a | [1] 33 |
| 172 | 601 |
| d203 | [4]504 |
| 203 | [4]564 |
| 206 | [4]350 |
| 106a | [4] 29 |
| e106a | [2]180 |
| 107a | [1]586 |
| 108a | [1]653 |
| 172 | 601 |
| 207 | [4]400 |
| 208 | 201 |
| 110a | [4] 14 |
| 172 | 601 |
| e209 | [4]634 |
| 172 | 601 |
| 113a | [4]289 |
| 113a | [2]291 |
| 172 | 601 |
| 115a | [4]223 |
| 115a | [4]624 |

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of McLean county; the Hon. CHARLES R. STARR, Judge, presiding.

JOHN E. POLLOCK, and WILLIAM BROWN, for appellant.

F. Y. HAMILTON, and KERRICK & BRACKEN, for appellee.

Per CURIAM: After a careful consideration of the record in this case we are satisfied that the judgment of the Appellate Court affirming the judgment of the circuit court is correct, and it will be affirmed.

Upon an examination of the opinion of the Appellate Court we find that the questions presented by the record have been fully considered, and the opinion of the Appellate Court by PLEASANTS, J., will be adopted as the opinion of this court:

"A way freight train of appellant, about one o'clock in the morning of November 2, 1894, on its way from Bloomington to Chicago, stopped at the incorporated village of Gardner, in Grundy county, to do some switching. The road there has two tracks, the east one being for all the trains going south and the west for all going north, and about six hundred feet north of the depot there is a switch leading off on a side-track, which had been opened by a brakeman of the freight train and through haste or oversight left open when the train passed on. It proceeded as far as the Big Four crossing, between a quarter and a half mile north of the depot, where it stopped for the passage of the midnight passenger train going south, which ran in on this open switch, and by collision with some cars standing thereon two or three hundred feet from its point, William House, the fireman on that train, was killed. It was running at a rate of twenty-five or

thirty miles an hour, and that was its usual rate there, notwithstanding an ordinance of the village forbidding a speed through it exceeding ten miles. A light formerly kept on this switch had been taken off about sixteen months previous to the accident, and the crews of both trains, having been running on that end of the road for several years, had long known of its removal.

"To recover damages for the death of House so caused, this action on the case was brought by his widow and administratrix. The declaration charged the company with negligence in taking off the light, and also in employing inexperienced and incompetent servants on the freight train, and the plea was the general issue. A verdict was returned for the plaintiff for $5000. Motions for a new trial and in arrest were overruled and judgment rendered on the verdict, from which judgment this appeal is prosecuted.

"The case presents three causes alike claimed to have been efficiently contributing to produce the unfortunate result, and so essentially that if either had been wanting it would not have been produced. These are, the absence of the switch light, the failure to close the opened switch, and the rate of speed at which the passenger train was running. Each of these is by one or the other of the parties charged to negligence—the first, by plaintiff, to that of defendant; the second, by each, to that of the freight train crew; and the third, by defendant, to that of the engineer of the passenger train.

"The effect of these charges upon the question of liability here involved depends upon the relations of the parties respectively charged, to the deceased, and of these only that of the freight train crew is disputed. Defendant was his master and the engineer his fellow-servant, but whether the freight train crew were or were not his fellow-servants is the question in dispute; and upon that question appellant is the affirmant, though the declaration contained the negative allegation. If this question

is rightly determined against the appellant, the judgment must be affirmed, because it is conceded that leaving the switch open was negligence, and was a proximate and efficient contributing cause of the accident, and that the freight train crew were servants of the defendant; and the law clearly is, that the risk of injury by their negligence, if they were not his fellow-servants, was not assumed by him, but is chargeable to appellant, their master.    If this question is decided against the plaintiff, another would remain to be considered.

"In the instructions given for the plaintiff defining fellow-servants the decisions of the Supreme Court were substantially followed, while in those given for the defendant the definition was more favorable than it was entitled to.    *Chicago and Alton Railroad Co.* v. *O'Brien,* 155 Ill. 630.

"We think the evidence sufficiently supported the finding that the crews of these two trains were not fellow-servants—not so co-operating nor habitually associated as to make them such.    Besides the case just cited and those therein referred to, we cite only *Lake Erie and Western Railroad Co.* v. *Middleton,* 142 Ill. 550, as illustrating the rule held.

"Again, the master should take reasonable care to prevent injury to his servants by accident while properly doing their work as such.    The train of the deceased was a midnight and fast passenger, that made no stop at Gardner and had nothing to do with the switch there, but was exposed to danger from its misplacement.    That risk could be avoided or greatly lessened by the cheap and simple means of a light so attached to it that the engineer, in approaching, could see whether it was open, in time to stop or slow, as might be necessary, before reaching it.    The company could easily provide it, but the train crew could not.    That it was a reasonable provision against that danger to crew and passengers, however remote, is manifest.    The jury might therefore well

find that under the circumstances shown, including the fact that it had been provided and previously long used for that purpose by the company, its removal was an act of negligence, which directly and materially contributed to the injury here complained of. If it had not been removed or had been restored, in all probability that injury would not have been done.

"That appellant was in fault with respect to the absence of the light is not denied, but it is contended that the risk it created was accepted and assumed by the deceased. An employee does not assume all the risks incident to his employment, but only to such as are usual, ordinary, and remain so incident after the master has taken reasonable care to prevent or remove them, or if extraordinary, such as are so obvious and expose him to danger so imminent that an ordinarily prudent and careful man would anticipate injury as so probable that in view of it he would not enter upon or remain in the employment. The principle is, that he cannot recover for an injury due to his own negligence or carelessness though that of the master may have also directly and materially contributed to cause it, and his taking or retaining the employment, with such knowledge, is proof of such carelessness on his part. (Wood on Master and Servant, secs. 384, 385, and notes.) In this case, the risk was that the switch might be open and the engineer unable to see it in time to avoid injury. This may be said to have been incident to the employment and apparent to the deceased; but whether usual or extraordinary, and whether it exposed him to danger so imminent as to charge him with a want of ordinary care for his own safety in continuing in the service, were questions for the jury.

" 'Usual' is defined as 'common; frequent; ordinary; customary; general;' and 'ordinary,' as 'common; usual; often recurring.' (Webster.) It cannot truly be said that a switch left open when it should have been closed is an

ordinary or usual incident in the employment of train hands on a railroad, and it is certain that no degree of light would enable the engineer to see it open except when it is open. Here there was no defect in the switch itself. Had it been used at all after it was opened it would have prevented the accident. The duty to close it rested upon those who knew how, were well able, had full opportunity, and every motive of interest to perform that duty and a settled habit of performing it. Used by this freight train daily for several years, it does not appear that it had ever before been left open. The two trains usually passed somewhere between Pontiac and Mazonia, and Gardner is between those points. The passenger crew saw the freight train on the night of the accident a short distance north of Gardner and knew it had come through Gardner only a short time before. They had no reason to suppose that it had left the switch there open, and were not bound to suspect that the freight crew had neglected a duty so plain and simple and yet so important. If the jury found that in raising a possibility so bare and remote there was not such carelessness on the part of the deceased as should bar a recovery, we ought not, on this evidence, to overrule that finding. (*Lake Shore and Michigan Southern Railway Co.* v. *Parker, Exrx.* 131 Ill. 557.) No other negligence is imputed to him, and if, in taking that risk, he showed himself reckless, it would appear by the same token that for sixteen months before the accident the company had upon its midnight special, limited, not one train hand who was reasonably or ordinarily careful for his own safety, to say nothing of that of its passengers.

"It is unnecessary to consider the question of negligence of the engineer in running at such a rate of speed, for though he was a fellow-servant of the deceased, and however negligent, if the deceased himself exercised due care, and his death was due to the contributing fault of either the company or the freight train crew, and *a for-*

*tiori* to that of both so contributing, the plaintiff was entitled to recover.

"The verdict appears to be well supported, and perceiving no material error in the record the judgment will be affirmed."                      *Judgment affirmed.*

Mr. Justice Boggs took no part in this decision.