JAMES HARTLEY

*v.*

THE CHICAGO AND ALTON RAILROAD COMPANY.

*Opinion filed June 19, 1902.*

1. MASTER AND SERVANT—*servant must have knowledge of negligent custom to assume risk.* A servant cannot be said to have assumed the risk of being injured through the negligence of another, not a fellow-servant, unless he has knowledge of the habitual or customary negligence of such other.

2. SAME—*when question of release is one of fact.* Where the evidence is conflicting as to the manner and terms upon which a release of plaintiff's cause of action was obtained, the question whether such cause of action is released is one of fact for the jury.

3. FELLOW-SERVANTS—*burden of showing existence of relation is upon defendant.* The burden of proving the existence of the relation of fellow-servants is upon defendant, notwithstanding the plaintiff alleges the negative in his declaration.

4. SAME—*when existence of relation should be determined by the jury.* Whether a brakeman connected with a transfer crew is a fellow-servant with the members of a switch crew should be left to the jury, under evidence that plaintiff's duties were to couple up cars which had been left upon a side-track by the switch crew to be taken out by the transfer crew who worked at one end of the yard, and that while so coupling cars the switch crew working at the other end of the yard kicked some cars in upon the side-track without notice to the plaintiff, who was injured by the collision between such cars and the ones he was in the act of coupling.

5. SAME—*whether relation exists is ordinarily a question of fact.* The question whether the relation of fellow-servants exists in a given case is always one for the jury, unless the facts admitted or proven beyond dispute show the existence of the relation within the established rule.

*Hartley* v. *Chicago and Alton Railroad Co.* 96 Ill. App. 227, reversed.

WRIT OF ERROR to the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. MARCUS KAVANAGH, Judge, presiding.

Plaintiff in error prosecutes this writ of error to reverse a judgment of the Appellate Court affirming a judgment against him for costs in the superior court of Cook

county in an action on the case for personal injuries. His declaration consists of but one count, in which he alleges that while he was in the employ of the defendant in error as a switchman in its yards at Brighton Park, being in the exercise of due care in the performance of his duties, "attempting to couple one of a number of cars which were then and there attached to the engine with which he was working, as aforesaid, to one of a string of cars then and there standing still in said yard, * * * other servants of the defendant who were working with a' certain other engine, and who, the plaintiff alleges, were not fellow-servants of his, negligently, carelessly and improperly caused to be pushed a certain string of cars against the string of cars which were stationary and which the plaintiff was attempting to couple on to, as aforesaid, putting the said stationary string in motion, and negligently failed to notify the plaintiff of their intention so to do, thereby causing the said stationary string of cars and the said string of cars attached to the engine with which the plaintiff was working, to collide violently, suddenly and with great force, and the plaintiff, as a result thereof, was caught between the draw-bars of the said cars he was attempting to couple, as aforesaid, and all the fingers of his right hand were then and there so severely crushed that it became then and there necessary to amputate them, and they were amputated," etc. The defendant filed a plea of the general issue and also a plea of accord and satisfaction, setting forth a release signed by the plaintiff in consideration of $280, purporting to release the defendant from all claim for compensation on account of the injuries set up in the declaration. To the last named plea plaintiff replied that the release therein set up was obtained by fraud. A trial by jury resulted in a verdict and judgment for the plaintiff for $5000 and costs of suit. On appeal to the Appellate Court for the First District that judgment was reversed on the ground that the evidence showed

that plaintiff and the servants whose negligence caused his injuries were fellow-servants, (*Chicago and Alton Railroad Co.* v. *Hartley,* 90 Ill. App. 284,) and the cause was remanded to the superior court. The case was again tried on the same evidence produced upon the first trial, and at the conclusion of all the evidence an instruction was given to the jury to find for the defendant, which being done, judgment was entered accordingly. The plaintiff then appealed to the Appellate Court for the First District, and the branch of that court affirmed the judgment below, but gave plaintiff in error a certificate of importance, upon which he has sued out this writ.

Plaintiff in error, in violation of our rules, has filed in this court, under a different cover, the same brief and argument used in the Appellate Court. Questions of law being alone open to review in this court, the evidence cannot be properly discussed or considered except for the purpose of determining whether the trial court erred in taking the case from the jury,—that is, whether there was any testimony produced upon the trial fairly tending to support the plaintiff's cause of action,—and the argument here should have been directed to that question, and not to a discussion of the weight of the evidence. We do not wish to be understood as recognizing the practice here resorted to, but inasmuch as the assignment of errors properly raised the question above indicated, and the argument was no doubt intended to insist upon that error, the case will be considered on its merits.

The accident occurred on the evening of the 30th of November, 1891, about eight o'clock, in the company's yards at Brighton Park. Plaintiff had been working with a switch crew in those yards for about five months with what was called the "transfer engine." He had had some experience as a switchman, and also as a brakeman, prior to his employment by the defendant. The freight yards of the company at Brighton Park are some five or six miles from the center of the city of Chicago.

Two main tracks run through the center of the yards from east to west. The yards are divided into the south side and the north side, the division line being the main tracks. On the north side there are about seven side-tracks and on the south side double that number. These side-tracks are numbered, starting from the track next to the main tracks, both to the north and to the south. The accident happened on the northernmost side-track, No. 7, while the plaintiff was attempting to couple cars. The yards are termed "open at both ends,"—that is, the side-tracks at each end connect with lead tracks which connect them with the main tracks. Plaintiff's crew was known as a "transfer crew," it being its duty to take trains of freight cars from any of the side-tracks down into the city, either to the Harrison street freight yards of the company, which were some eight or nine miles distant, or to the freight yards of other railroad companies. In doing this work the transfer crew, with its engine, came in upon the side-track at the east end of the yards and was there attached to the cars to be transferred, which were always standing upon one of the side-tracks and pointed out by the yard master. These cars stood upon the side-track uncoupled, and it was necessary for the transfer crew to couple up the particular string of cars, and also couple them to the engine and then take them to the yards for which they were destined. These cars were placed upon the various side-tracks by another switching crew working at the west end of the yard,— the yard being about a half mile long,—taking cars which came from St. Louis and Kansas City. When the freight trains came in from the west they were stopped either upon the main tracks or upon some one of the side-tracks south of the main tracks and left there. The switch engine working at the west end, with its crew, went over and took these freight trains, or such portions of them as it could conveniently handle, and switched the cars into and upon the various tracks that lay north of the main

tracks. In doing this work that switching crew would "kick" the cars down on the various side-tracks, the cars going in upon the side-track from the west end of the yard. The cars intended to be transferred to the Chicago and Northwestern Railroad Company would be kicked down upon the side-track where all of the cars for that particular company were to be placed. A car intended for the Harrison street yards of the defendant company would be kicked down upon track No. 7, and cars for any other railroad would be sent down upon the track upon which all the cars for that particular road were placed. Sometimes a side-track would have no cars upon it, and at such times the custom was for a brakeman to get upon the car being kicked down the track so as to set the brake and prevent it from running out at the other end of the side-track, after which, as claimed by the company, cars would be kicked down upon that side-track without a man or brakeman attending them, the first car acting as a buffer to stop the others. The cars placed on the side-track were left uncoupled, though sometimes several would come in on one train destined for the same company and would be kicked upon the side-track coupled together, so that it was impossible for the transfer crew to know how many cars upon a side-track were coupled together and how many were not, consequently it was necessary for that crew, before it took its train out at the east end, to look over the couplings and see that the cars of the train were properly coupled, and whatever number of cars happened to be upon one of the side-tracks for transfer would constitute a transfer train, unless there were too many for the engine to pull, in which case a certain number would be left. At the time plaintiff was injured, the switch engine, with its crew, was at work at the west end of the yards starting out cars and kicking them down upon the various side-tracks on the north side, and the transfer engine, with its crew, came in upon the east end of side-track No. 7 for the purpose of

taking cars upon that track down to the Harrison street yards, and plaintiff and another member of his crew were coupling up the cars upon that side-track. There were about twenty cars upon the track, and while plaintiff was in the act of coupling the last car to the rest of the train a number of cars were kicked down by the switching crew without any notice or signal to him or his crew, and his hand was injured as above stated. Subsequently a release for the injuries was signed by him and the company paid him $280. The testimony on behalf of the defendant company is to the effect that that release was entered into after full explanation to the plaintiff and with all fairness. The plaintiff, on the other hand, testified that he did not understand the terms of the agreement, and that he was promised future employment with the company in addition to the money consideration.

JAMES C. McSHANE, for plaintiff in error.

LEE & HAY, (WILLIAM BROWN, of counsel,) for defendant in error.

Mr. JUSTICE WILKIN delivered the opinion of the court:

The defendant in error urges these three propositions: First, that the plaintiff assumed the risk; second, if injured by the negligence of an employee of the defendant, he and that employee were fellow-servants; and third, the cause of action had been fully adjusted and released to the defendant.

That the plaintiff assumed the risk of the act of other servants of the defendant which caused his injury was a matter of defense. We do not understand counsel to deny that the act of pushing the cars against those which the plaintiff was attempting to couple, without any signal or notice to him, was an act of negligence. An employee can only be held to assume risks of which he has express or implied notice, and it cannot be said that one servant assumes the risk of being injured through the negligence

of another, not a fellow-servant, unless he has knowledge
of the habitual or customary negligence of such other
servant. Therefore, even though the evidence showed,
without contradiction, that the cars were thrown upon
the side-track in the manner alleged in pursuance of a
usual custom, still, unless it was also conceded or shown,
without contradiction, that the plaintiff knew of that cus-
tom, he could not be legally held to have assumed the
risk. On both of the foregoing questions the evidence in
this record is conflicting, and therefore the jury should
have been allowed to say whether the plaintiff did as-
sume the risk or not. Whether he had released the cause
of action set up in his declaration on the issue made
was also a matter of defense, and, the evidence being
conflicting, a question for the jury.

As to the question of fellow-servants, it has long been
the settled rule of this court that the servants of a com-
mon master, to be co-employees so as to exempt the mas-
ter from liability on account of injuries sustained by one
resulting from the negligence of the other, must be di-
rectly co-operating with each other in a particular busi-
ness, or that their usual duties bring them into habitual
association so that they may exercise a mutual influence
upon each other promotive of proper caution. (*Chicago
and Alton Railroad Co.* v. *O'Brien,* 155 Ill. 630, and cases
cited.) The definition of fellow-servants is for the court.
Whether employees of the common master fall within
that definition is a question of fact, hence whether or
not the relation exists is a mixed question of law and
fact. (*Indianapolis and St. Louis Railroad Co.* v. *Morgen-
stern,* 106 Ill. 216; *Lake Erie and Western Railroad Co.* v.
*Middleton,* 142 id. 550; *Pullman Palace Car Co.* v. *Laack,* 143
id. 242; *Mobile and Ohio Railroad Co.* v. *Massey,* 152 id. 144.)
The burden of proof to establish the relation is upon
the defendant,—and that, even though the plaintiff al-
leges the negative in his declaration. (*Chicago and Alton
Railroad Co.* v. *House,* 172 Ill. 601.) The question whether

the relation of fellow-servants exists in a given case is always one for the jury, unless the facts admitted or proved beyond dispute show the existence of the relation within the foregoing definition, when it becomes a question of law. (*Chicago and Eastern Illinois Railroad Co.* v. *Driscoll*, 176 Ill. 330.) We held in that case, where the evidence is conclusive and uncontradicted and reasonable minds must reach the same conclusion on the facts, negligence becomes a question of law; and on the same principle, "whilst, as a general rule, the question as to whether the relation of fellow-servants exists is one of fact, yet where the facts are conceded or where there is no dispute whatever as to the facts, and they show, beyond question, that the relation of fellow-servants exists, then the question may become one of law."

The Branch Appellate Court upon both appeals of this case seems to have understood it to be controlled by the *Driscoll case*, and that authority is chiefly relied upon by counsel for defendant in error to sustain the judgment below. When the facts in that case are considered and compared with the undisputed testimony of the plaintiff and other witnesses in this, the cases are manifestly entirely dissimilar. In the *Driscoll case* there were two switching crews, one known as "Hurd's crew" and the other as "Ward's." Driscoll had been a member of both crews and was familiar with their work and the yard and tracks, but at the time of his injury was working with Ward's crew. The duties of the two crews were the same, —that is, both crews at times performed the same duties. In stating the facts of that case we said: "Within the limits of the yard the duties of the two crews were identical and performed at the same time. Each crew consisted of five men: an engineer, a fireman, a foreman and two helpers. One member had the duty of making couplings in the front part of the train, open switches ahead of the engine and repeating to the engineer signals from the rear. It was the duty of another member

of the crew to act as rear man.   His duties were to go to the rear end of the train on a repair track to see that all cars were properly coupled and the train in proper condition to be moved, to give signals from the rear and close switches behind the train.   These duties were performed by the foreman and helpers indiscriminately. Driscoll had frequently acted as rear man and was performing those duties on the evening of the accident. There is no dispute about these facts, and they appear from the plaintiff's evidence and are uncontroverted." In the present case there were not only two switching crews, but their duties were altogether different.   One operated an engine at the east end of the yards, making up and taking out trains of freight cars at that end; the other operated an engine for an entirely different purpose one-half mile distant, at the other end of the yards, taking cars from side-tracks on the south and placing them on the north.   There is no evidence in this record which can properly be said to be conclusive of the fact that the two crews co-operated with each other in the performance of their duties.   Neither is it conceded or undisputed that their usual duties brought them into habitual association with each other.   In other words, upon the facts and circumstances proved in this case showing the relation of the two switching crews, their duties and the manner of performing them, all reasonable minds would not agree that the members of the two crews were co-operating with each other in a particular business, or that their usual duties brought them into habitual association so that they might exercise a mutual influence upon each other promotive of proper caution.

It is not for us to say how a jury would or should have found the facts material to the plaintiff's case if they had been submitted to them.   We deal with the single issue, was there any competent evidence in the record properly tending to support the material allegations of plaintiff's declaration produced upon the trial.   That question must

be decided in the affirmative. It was therefore error for the trial court to take the case from the jury and enter judgment against the plaintiff below for costs, and the Appellate Court erred in affirming that judgment. The latter judgment will accordingly be reversed and the cause remanded to the superior court for another trial.

*Reversed and remanded.*