### Wabash Railroad Company v. John L. Thomas, administrator.

1. ASSUMED RISK—*how question of, determined.* Whether a particular risk was usual and ordinary so as to come within the doctrine of assumed risk is ordinarily one of fact for the jury.

2. ASSUMED RISK—*what not, as a matter of law.* The danger arising from a switch being accidentally left open, held in this case not an assumed risk as a matter of law.

3. FELLOW-SERVANTS—*how question as to who are, determined.* The definition of the term "fellow-servant" is for the court, but whether employees of a common master fall within that definition is a question of fact; hence, whether or not the relation exists is a mixed question of law and fact. Whether the relation exists in a given case is always

one for the jury, unless the facts admitted or proved beyond dispute so clearly show the existence of the relation within the definition that all reasonable minds must reach the same conclusion, in which event it becomes a question of law.

4. JUDICIAL NOTICE—*of what taken.* The court will judicially notice matters of common knowledge.

Action on the case for death caused by alleged wrongful act. Appeal from the Circuit Court of Shelby County; the Hon. SAMUEL L. DWIGHT, Judge, presiding. Heard in this court at the May term, 1904. Reversed. Opinion filed November 18, 1904.

C. N. TRAVOUS, for appellant.

W. C. KELLEY and CHAFEE & CHEW, for appellee.

MR. JUSTICE PUTERBAUGH delivered the opinion of the court.

This is an action on the case against appellant for the recovery of damages for causing the death of plaintiff's intestate, John M. Thomas. The plaintiff recovered judgment in the Circuit Court for the sum of $4,500, to reverse which the defendant appeals. At the close of all the evidence a request by the defendant for an instruction directing a verdict of not guilty, was presented and refused. Thereupon similar separate instructions were presented and refused as to the first, second and third counts jointly, the fourth and fifth counts jointly, and the sixth count separately.

There is no material conflict as to the facts, which are, in substance, as follows: About eleven o'clock on the night upon which the deceased was killed, an extra freight train left appellant's yards at Brooklyn, bound for Decatur, which was about 100 miles distant. The train consisted of thirty-four cars, and, in addition to the engine drawing it, what is termed as a "dead" engine—that is, one without steam, with a part of its machinery disconnected, and which is drawn the same as regular cars. The deceased was in charge of, and accompanied such engine. His only duties were to keep the same in running order; to watch the side-bars, rods, journal bearings and driving axles, and at intervals to oil the same that they might not become heated.

The regular crew in charge of the train consisted of a fireman, engineer, conductor and two brakemen. Shortly after midnight the train reached Edwardsville Junction, a place about twenty miles from Brooklyn. At that point there was a passing track connected with the main track, and immediately north of and connected with the passing track, was what was known as the storage track. When the train reached Edwardsville Junction, the deceased, who up to that had been riding in the caboose, went to the "dead" engine, examined and oiled the same, and then returned to the caboose. In the meantime the regular train crew were engaged in setting out cars which were to be left at the junction, and in picking up those which were to be taken elsewhere. During the progress of the switching, through the negligence of one of the brakemen of the train, the switch connecting the passing track with the storage track had been left open. Shortly thereafter it became necessary to back the train from the main track in upon the passing track, in order to permit a passenger train to pass. In doing so, by reason of the said switch being open, the train left the passing track, took the storage track, and collided with several cars standing thereon and loaded with lumber. The shock of the collision caused the lumber upon the first car to fall upon the caboose and upon the deceased, causing his death.

It is conceded by appellant that the switch in question was left open through the negligence of one of the brakemen of the train crew, and that such negligence was the proximate cause of the accident; but it is contended that the risk created thereby was accepted and assumed by the deceased, as one ordinarily incident to his employment, and that appellant would not therefore be liable, whether the negligence was that of a fellow-servant or otherwise. While it may be true that the danger of injury from open switches was incident to the employment and was apparent to the deceased, whether such risk was usual or ordinary was a question for the jury, which properly determined that it was not.

" An employe can only be held to assume risks of which he

has express or implied notice, and it cannot be said that one servant assumes the risk of being injured through the negligence of another, not a fellow-servant, unless he has knowledge of the habitual or customary negligence of such other servant." Hartley v. C. & A. R. R. Co., 197 Ill. 440. There is nothing in the record tending to show that any or either of the trainmen employed by appellant were in the habit of negligently leaving switches open when they should be closed. It cannot therefore be truly said that the risk arising therefrom was an ordinary or usual incident to the employment undertaken by the deceased. C. & A. R. R. Co. v. House, 172 Ill. 601.

Appellant further contends that no recovery can be had for the reason that the undisputed facts show conclusively that the deceased and the member of the train crew whose negligence caused his death, were fellow-servants. "The definition of the term 'fellow-servant' is for the court. Whether employes of the common master fall within that definition is a question of fact; hence, whether or not the relation exists, is a mixed question of law and fact. Whether the relation exists in a given case is always one for the jury, unless the facts admitted or proved beyond dispute so clearly show the existence of the relation within the definition, that all reasonable minds must reach the same conclusion, in which event it becomes a question of law." Hartley v. R. R. Co., 197 Ill. 440; Ill. S. Ry. Co. v. Marshall, 210 Ill. 562.

The jury in the case at bar found that the relation did not exist, and it is well settled that its determination of the question was conclusive, unless the court was able to say, as a matter of law, that the undisputed facts showed beyond question that the deceased and the member of the train crew whose negligence caused the accident, were at the time it occurred directly cooperating with each other in the handling or operation of the train; or that their usual duties brought them into habitual association, so that they were able to exercise a mutual influence upon each other promotive of proper caution.

It appears from the evidence that when a "dead" engine, the machinery of which is partially disconnected, is made a part of a train for the purpose of transporting the same, as was the one in question, it is necessary that some one should accompany it to see that the machinery does not become out of order and is kept properly oiled. It is a matter of common knowledge that if such an engine does not receive proper care and attention it is probable that not only will the engine itself be seriously damaged, but that the operation of the entire train may be interfered with or prevented, and possibly that an accident occur whereby a loss of property or even life may ensue. It follows that the presence and assistance of the deceased was essential to the proper handling and operation of the train, and that he and the members of the regular crew were directly cooperating with each other in a particular work. The deceased having, by his contract of employment, assumed the risk of the negligence of his fellow-servants, no action based thereon will lie. The trial court should have allowed appellant's instruction and directed a verdict for the defendant.

The judgment of the Circuit Court will be reversed without remanding.

*Reversed.*

Finding of facts, to be incorporated in the judgment of the court:

We find that the deceased and the member of the train crew whose negligence caused his death, were, at the time of the accident, directly cooperating with each other in the handling and operation of the train in question.