## Pennsylvania Company v. James A. Chapman.

### Gen. No. 11,517.

1. OPERATION OF TRACKS—*when evidence tends to establish.* Held, from the particular evidence in this case that there was proof tending to establish the operation of the tracks and the conducting of the business of switching cars in the particular yards involved in this suit by the defendant.

2. ASSUMED RISK—*what not.* Where an employee of a railroad company is engaged at work in railroad yards and is injured through the "kicking" of cars therein, he cannot be said to have assumed the risk of injury where it does not appear that he knew of the existence of a custom by which cars were in the habit of being "kicked" in said yards.

3. CAUSE OF ACTION—*what does not waive.* Held, that membership in the relief organization connected with a railroad company and the acceptance of some benefts therefrom did not operate to waive the plaintiff's right to sue on his original cause of action.

Action on the case for personal injuries. Appeal from the Circuit Court of Cook County; the Hon. MURRAY F. TULEY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1903. Affirmed. Opinion filed February 10, 1905.

Statement by the Court. This is an appeal by the defendant from a judgment for $12,183.50 recovered against it in an action on the case for personal injuries. The plaintiff when he was injured, was working as a switchman in the railroad yards known as the 59th street yard of the Pittsburg, Chicago, Cincinnati and St. Louis R. R. Company, called the Panhandle Company. The 59th street yard had a north end and a south end, 59th street being the dividing line between the two ends. There were a large number of tracks in each end, some of which crossed 59th street. The trains of cars came into the yards from the south. The switching crews in that end of the yard broke up the trains, selected the cars which were to go upon the different tracks in the north end of the yard according to the place in the city where the cars were to be taken, switched the cars intended for a particular track in the north end of the yard upon a track in the south end connected with that track and then "kicked" the cars across

59th street on to the proper track in the north end of the yard. Plaintiff's crew was a transfer crew. It consisted of an engineer, fireman, conductor and three switchmen. It was the duty of that crew to couple together into a train the cars which had been "kicked" upon a track in the north end of the yard by a switching crew and take the train north to its destination in the city. The switching crew had nothing to do with a car after it was "kicked" across 59th street, nor had the transfer crew anything to do with a car until it was "kicked" across 59th street on to a track in the north end of the yard.

The accident occurred on track 16. Several cars stood upon that track a short distance north of 59th street, which plaintiff's crew was preparing to make part of a train to take north into the city. Two of these cars were not coupled together. The engine with which plaintiff worked was some distance away from the cars just mentioned when plaintiff went between the two cars which were not coupled together to loosen a knuckle and get "iron" ready to make a coupling when his engine came to push the cars together. While he was so employed a switching crew at work in the south end of the yard "kicked" a car north across 59th street on to track 16 and thereby drove a car against the car at which plaintiff was, and plaintiff's hand was caught between the bumpers and so injured that it had to be amputated.

The plaintiff made application for employment November 26, 1897, to Walton, the superintendent of the Panhandle Company, and was employed by him. The next day he made an application in writing for membership in the Relief Department of the company, which contained the following provisions:

"I agree that the acceptance of benefits from the said relief fund for injury, or death, shall operate as a release of all claims for damages against said company arising from such injury or death, which could be made by or through me, and that I, or my legal representatives, will execute such further instrument as may be necessary formally to evidence such acquittance.

I also agree that this aplication, when approved by the superintendent of the Relief Department, shall make me a member of the relief fund, and constitute a contract between myself and the said company, or *with any other company that is now, or may hereafter be associated with said company in the management of the Relief Department in case of the transfer of my service to any such* other company during membership in the relief fund; and that the terms of this application, and the regulations of said department shall, during my membership, be a part of the conditions of my employment by the said company *or either of such other companies*, and that the same shall not be avoided by any change in the character of my services or locality where rendered while in such employment."

Plaintiff was admitted to membership December 1, 1897, and was such member when the accident occurred. The Pennsylvania Company at the time of the accident was, and for some years before had been, associated with the Panhandle Company in the management of the Relief Department of the two companies, which was carried on in the name of the "Voluntary Relief Department of the Pennsylvania Lines West of Pittsburg." Under the by-laws of that department plaintiff was required to contribute to that department $2.25 per month and was entitled to receive from it in case of disability $1.50 per day for the first fifty-two weeks and 75 cents per day thereafter during the continuance of the disability. He was paid by the Relief Department benefits at the rate of $1.50 per day from January 17 to August 15, 1898, 211 days, $316.50. The medical examiner of the Relief Department then gave him a return to duty card, which stated that he had recovered and would be able to return to duty August 16, 1898. He reported for duty and was on that day put to work. He worked a few days but his wound broke open again and he was unable to work. He then applied for further benefits to the medical director who gave him the card to return to duty, and to the persons from whom he had received checks for the benefits which had been paid to him, and was told by them there was nothing in the Relief Department for him, that he had received all that

he was entitled to and he has in fact been paid no benefits since August 15, 1898. He has been during, at least, a part of the time since August, 1898, disabled and unable to work by reason of the injury complained of.

GEORGE WILLARD, for appellant.

KITT GOULD, for appellee.

MR. PRESIDING JUSTICE BAKER delivered the opinion of the court.

Appellant urges the following propositions: first, that the defendant did not own or operate the tracks, engines and cars in question, nor was the plaintiff in its employ at the time of his injury; second, that the plaintiff assumed the risk; third, that he and the switchman by whose negligence he was injured were fellow-servants; fourth, that the plaintiff was guilty of contributory negligence; fifth, that by the acceptance of benefits from the Relief Department to the amount of $316.50, plaintiff waived his right of action, if any he had.

The trial judge of his own motion gave to the jury the following instruction:

"Unless the jury believe from the evidence that the Pennsylvania Company itself, or by a corporation (or a railroad company), which you find from the evidence was known and called the Pittsburg, Cincinnati, Chicago & St. Louis Railroad Company, was operating the tracks and business of switching cars in said Fifty-ninth street yard at the time of the happening of the injury in question, then the plaintiff cannot recover in this action."

Appellant insists that it was error to give this instruction because there was no evidence tending to show that the defendant either itself or by the corporation mentioned, was operating the tracks and business of switching in the yards where plaintiff was injured at the time of his injury.

There was, we think, not only evidence to make it proper to give this instruction, but evidence quite sufficient to warrant the jury in finding that the defendant was at the time plaintiff was injured, operating the railroad known as

Pennsylvania Co. v. Chapman.

the Panhandle Railroad through and in the name of the Panhandle Company, and if the defendant was so operating the Panhandle Railroad, the employment of the plaintiff by that company must be regarded as an employment of him by the defendant, and the yards, tracks and engines of that company as the yards, tracks and engines of the defendant.

In Hartley v. C. & A. R. R. Co., 197 Ill. 440, the facts touching the question of the assumption of risk by the plaintiff are substantially the same as in the present case. The defendant had some miles from the terminus of the road in Chicago, freight yards through the center of which ran two main tracks east and west. The yards are divided by the main tracks into the south side and north side. On each side are a number of tracks running in the same direction as the main tracks and near the center of the yards from east to west, tracks run across the main tracks connecting the tracks on the south side with those on the north side. The trains from the west came into the yard on the south side at the west end of that yard. That part of the freight yard which was on the south side of the main tracks was called the switching yard and that on the north side the transfer yard. The switching crew took the cars in the switching yard which were to go upon a particular track in the transfer yard, and "kicked" them across the main tracks on to the proper track in that yard. They were there coupled together into a train by a transfer crew and taken east to their destination in the city by a transfer engine and crew. A switching crew had taken a number of cars from the switching yard and "kicked" them across the main tracks on to track 7 in the transfer yard. A transfer engine with its crew came upon the east end of track 7 to take the cars upon that track to the Harrison street yards of defendant, and plaintiff and another member of that crew were coupling the cars upon that track. While so engaged a number of cars were "kicked" by a switching crew across the main tracks on to track 7 without any notice or signal to plaintiff or his crew, and his

hand was caught between the bumpers and injured. In the opinion in that case it was said: " That the plaintiff assumed the risk of the act of other servants of the defendant which caused his injury, was a matter of defense. We do not understand counsel to deny that the act of pushing the cars against those which the plaintiff was attempting to couple, without any signal or notice to him, was an act of negligence. An employee can only be held to assume risks of which he has express or implied notice, and it cannot be said that one servant assumes the risk of being injured through the negligence of another, not a fellow-servant, unless he has knowledge of the habitual or customary negligence of such other servant. Therefore, even though the evidence showed, without contradiction, that the cars were thrown upon the side-track in the manner alleged in pursuance of a usual custom, still, unless it was also conceded or shown, without contradiction, that the plaintiff knew of that custom, he could not be legally held to have assumed the risk. " Hartley had been at work five months in the yard in which he was injured. The plaintiff had been employed as a switchman by the Panhandle Company less than two months and had worked in the 59th street yard less than one week before he was injured. The evidence did not conclusively show that the plaintiff knew that it was the custom to "kick" cars from the switching yard across 59th street on to a track in the transfer yard without notice or signal to those then at work upon that track in the transfer yard. At most, whether he knew of such custom, was a question for the jury upon which, under the evidence, their verdict is conclusive. The verdict implies a finding by the jury that he did not know of such custom and if he did not know of the custom he could not, as was said in the Hartley case, " be legally held to have assumed the risk. " In the same opinion it was said : " In the present case there were not only two switching crews, but their duties were altogether different. One operated an engine at the east end of the yards, making up and taking out trains of freight cars at that end; the other oper-

Pennsylvania Co. v. Chapman.

ated an engine for an entirely different purpose one-half mile distant, at the other end of the yards, taking cars from side-tracks on the south and placing them on the north. There is no evidence in this record which can properly be said to be conclusive of the fact that the two crews co-operated with each other in the performance of their duties. Neither is it conceded or undisputed that their usual duties brought them into habitual association with each other. In other words, upon the facts and circumstances proved in this case showing the relation of the two switching crews, their duties and the manner of performing them, all reasonable minds would not agree that the members of the two crews were co-operating with each other in a particular business, or that their usual duties brought them into habitual association so that they might exercise a mutual influence upon each other promotive of proper caution. "

The evidentiary facts in the Hartley case from which, if the case had been submitted to the jury, the jury must have determined whether Hartley and the switching crew were fellow-servants are, so far as that question is concerned, the same as the evidentiary facts in this case, from which the jury found by their verdict that the plaintiff and the switching crew were not fellow-servants.

What inferences may be drawn from given facts is a question for the court. What inferences should be drawn, is a question for the jury. It was held in the Hartley case, in effect, that the jury might properly have found from the evidentiary facts in that case, that Hartley and the switching crew were not fellow-servants. Upon the authority of that case we hold that the jury might properly, from the evidentiary facts in this case, find that the plaintiff and the switching crew by whose negligence he was injured were not fellow-servants.

The evidence as to the negligence of the plaintiff is conflicting, but we think the jury were warranted in finding that he was not guilty of contributory negligence.

The last objection urged by appellant is, that plaintiff

waived his right of action against the defendant, if any he had. That defendant, if liable in the first instance to plaintiff for his injury, is entitled to the benefit of the contract between the plaintiff and the Panhandle Company made by his application for membership in the relief department of that company, and its acceptance by the superintendent of the relief department is clear and is not disputed. The only instructions asked by the defendant which it is claimed relate in any way to the effect of this contract and of the acceptance of benefits by plaintiff from the relief department, upon the right of plaintiff to maintain this action, are the following, given for the defendant: "The jury are instructed that the plaintiff is bound by such papers as the plaintiff signed, and thus signed have been put in evidence in this case," and the peremptory instruction to find for the defendant, which was refused. If the question whether the contract relied upon was fully performed, whether the plaintiff was paid all the benefits he was entitled to receive from the relief department for his disability by reason of the injury complained of, had been submitted to the jury, the evidence would, in our opinion, warrant and support a finding that the contract was not fully performed, that the plaintiff was not paid all the benefits he was entitled to receive from the relief department.

We are not prepared to hold that a partial performance only of the contract is a bar to this action; that an acceptance by the plaintiff of a part only of the benefits he was entitled to, waived his right to recover for the injury, nor to hold that in case the persons in charge of the relief department refused to pay to plaintiff benefits to which he was entitled, that his remedy must be sought before the tribunals of the relief department, but hold that in such case he may recover upon his original cause of action, if one he had, and that in case of such recovery the defendant is only entitled to credit for the benefits paid.

The judgment of the Circuit Court will be affirmed.

*Affirmed.*