ELIZABETH D. COLVIN AND HUSBAND *vs.* SAMUEL H. PECK.

Hartford Dist., May T., 1892. ANDREWS, C. J., CARPENTER, SEYMOUR, TORRANCE and J. M. HALL, Js.

Where a cause is appealed from a lower court to the Superior Court the plaintiff cannot be allowed to abandon his cause of action for another within the original jurisdiction of the appellate court.

Where a count has been stricken out it is out of the case for all purposes, and can only be restored by leave of the court or allowed as a further amendment.

A man cannot be guilty of a fraud committed by his agent unless he in some way participated in it, and his ratification of a trade fraudulently made by his agent does not become an adoption of the fraud by him if he was ignorant of it.

The defendant had given his note for a horse which he purchased and which was sold by his agent to the plaintiff, who claimed the sale to be fraudulent. The plaintiff procured an assignment of the note and got a judgment for the amount of it against the defendant, and also sued him for the fraud and recovered exemplary damages. Held that the plaintiff could not retain both judgments. If the judgment on the note should be allowed to stand, the plaintiff could have no cause for complaint if there should be allowed on the other only enough to make good the damage sustained.

[Argued May 6th—decided June 30th, 1892.]

ACTION for fraud in contracting a debt, for fraud in the sale of a horse, and for a debt due by a judgment; brought, by the defendant's appeal from the judgment of a justice of the peace, to the Court of Common Pleas for Hartford County, and, after sundry amendments of the complaint, tried to the jury before *Taintor, J.* Verdict for the plaintiff, and appeal to this court by the defendant. The case is fully stated in the opinion.

*J. Coats*, for the appellant.

*J. P. Andrews* and *J. Hamlin*, for the appellees.

CARPENTER, J. The original complaint in this case is peculiar. The first count is on a judgment founded on a debt alleged to have been fraudulently contracted. The second is for concealing and withholding property so that it could not be taken by legal process, while admitting that a valid judgment debt was owed. The third is for selling a horse, fraudulently representing that he was the owner thereof. The fourth is simply an action of debt on judgment. The judgment referred to in the first, second and fourth counts is expressed to be for the sum of $105.94; damages claimed, $100.

To this complaint there was a plea to the jurisdiction. The court overruled the plea, and, the defendant refusing to answer over, rendered judgment for the plaintiffs for $100 damages and costs. The defendant appealed to the Court of Common Pleas.

In that court, at its September term, 1889, the plea in abatement was overruled, and the defendant ordered to answer over. Thereupon the plaintiffs amended their complaint by striking out all the counts, and substituting therefor a single count on a judgment demanding $200 damages. At the March term, 1890, the plaintiffs again amended the complaint, by striking out all the counts and substituting two new counts. The defendant moved to expunge the first count, and for a greater particularity of statement in the second. The plaintiffs then, at the May

term, amended by striking out the first and fourth counts, by altering the third count, making it the first, and the second count, making it the second amended count. The second count was disallowed, and the first allowed, which thus stood as the only count in the complaint.

This method of conducting a cause is novel to us. All the counts standing in the complaint when the cause came into the Court of Common Pleas were stricken out, and one count, not within the jurisdiction of the justice, substituted. Thus the appellate jurisdiction was abandoned for an original jurisdiction, and a cause of action within the original jurisdiction of the court substituted for the cause of action on which the judgment appealed from was rendered.

We are aware of no statute or practice authorizing such a proceeding. It is an abuse rather than a legitimate use of the statute of amendments. An appealed case may be, and it is expected to be, tried in the appellate court. For the plaintiff to abandon that cause of action for another within the original jurisdiction of the appellate court is irregular and improper.

It will be noticed that all the counts in the complaint as it stood when the appeal was taken, were twice stricken out, the first and fourth original counts were again stricken out, and the third and second counts were amended and formed the two counts of a substituted complaint. The court allowed the first amended count, and the third original one as amended, and disallowed the second. This amendment is infected with the same infirmity as the first.

After the first amendment the complaint consisted of one count only. The last amendment was in legal effect a substitution of the count as it finally stood for the single count in debt on judgment, and is affected with the same vice, being a substitution of a cause of action within the original jurisdiction of the appellate court for the cause of action brought to and appealed from the justice court.

We suppose however that the theory of the plaintiffs was that the four original counts, notwithstanding the fact that they had been twice stricken out, were still subject to amend-

ment. We cannot take that view. When a count is stricken out it is out of the case for all purposes. It can only be restored by leave of the court or allowed as a further amendment. The theory and practice adopted in this case only lead to confusion and embarrassment.

These amendments were allowed by the court against the defendant's objection, and we think were erroneously allowed.

But we pass by the amendments and come to the merits of the case. As the record now stands the complaint consists of a single count, the cause of action being found in the exchange of horses. The exchange was made by an agent of the defendant, and the alleged fraud consisted in his representing, at the time of the exchange, that the defendant owned the horse, when, as it is claimed, he did not. One Kingsley had previously sold the horse to the defendant, taking his note for a part of the purchase money, with an agreement that the title should remain in Kingsley until the note was paid.

The agent, one Bliss, exchanged the horse with the plaintiff in the absence of the defendant. It is found that " no evidence was offered that Bliss had any knowledge as to the defendant's title, or that the defendant knew of the express representations of Bliss, further than would be inferred from his ratification of the trade." No evidence was offered that the defendant ever authorized Bliss to commit a fraud, or that he knew of any false representations at the time he ratified his acts.

The court charged the jury that " a man is presumed to know whether or not he owns what he attempts to sell, and if the jury find that when the defendant sold the mare to Mrs. Colvin he had no title to the mare, but falsely represented that he did own her and had good right to sell her as his own property, and that such statement was fraudulently made with a view to induce Mrs. Colvin to purchase, and that in reliance on this statement she did in fact purchase the mare and paid the defendant therefor, the defendant would be guilty of a fraud for which the plaintiffs may re-

cover, unless you find that Kingsley had been paid before he replevied the mare." This charge is assigned as error.

It is difficult to see how a man can be guilty of a fraud committed by his agent unless he himself in some way participated in it. It is not claimed that he was in any sense an actual party to it. Fraud is imputed to him because he ratified the trade,—and that too without any knowledge that there was a fraud. The court assumed that if he ratified the trade he thereby adopted the fraud as his own, although he may have been ignorant of it. In this we think the court erred.

The jury were expressly told that if the false representation was fraudulently made with a view to induce the purchase, was relied on, and did in fact induce the purchase, the defendant was guilty of a fraud. This charge was hardly adapted to the case. It took no notice of other material circumstances. The defendant was in possession of the horse as his own, had a right to claim it as his own against all the world but Kingsley, and had an absolute right to pay his note and thereby become the absolute owner of the horse.

We are not prepared to sustain the charge that the false representation, so far as it was false, was necessarily a fraud. Bliss may have honestly supposed that, for the purposes of the trade, the defendant did own the horse. He certainly had the right to become the owner, and may have intended in good faith to consummate the title by paying the note. Thus he was in fact a qualified owner. If there was no fraud in Bliss, a question which ought to have been submitted to the jury, and not have been disposed of by the court as a question of law, there certainly could have been no fraud in the defendant by imputation.

It will be observed that the question here is whether the defendant is liable in an action of fraud for a fraud committed by his agent. The question is not whether the principal is bound by the contract of his agent; nor whether the other party may not annul the contract for fraud. Neither is it a question whether, if the principal derives any advantage from the fraud of his agent at the expense of the

other party, he may not be bound to make it good in some form of action. In contracts of sale of personal property there is an express or implied warranty of title by the vendor. This was clearly a defect of title, and the defendant was bound to make it good, irrespective of fraud. It seems to us questionable whether the defendant is liable for fraud in this case, if there was any, especially for exemplary damages.

There is another aspect of this case that ought not to pass unnoticed. Kingsley asserted his title to the horse. The plaintiffs recognized his claim, paid the amount claimed to be due for it with costs and expenses, and took an assignment of the note given by the defendant to Kingsley. They then brought a suit on the note against the defendant and recovered judgment, which is unpaid and not reversed. It is claimed that the legal effect of that transaction was to confirm the sale from Kingsley to Peck and eliminate fraud from the case. We have no occasion to consider this question, for it does not appear to have been distinctly made in the court below, and is not clearly stated in the reasons of appeal. But one thing seems to be clear—the plaintiffs are not entitled to retain both judgments. The judgment on the note stands. If in addition to that they recover sufficient to make good all the damages sustained, (not including exemplary damages,) we do not at present see why or how they have any cause of complaint.

There is error and the judgment is reversed.

In this opinion the other judges concurred.