## CHARLES H. SLACK

*v.*

## ABRAHAM L. HARRIS.

*Opinion filed December 16, 1902.*

1. APPEALS AND ERRORS—*when not error to refuse instruction to find for defendant.* It is not error to refuse an instruction to find for the defendant if there is evidence tending to prove the plaintiff's cause of action.

2. MASTER AND SERVANT—*engineer authorized to give orders to elevator boy is a vice-principal.* An engineer clothed by the owner of a building with authority to give orders to the elevator boy and direct him in his control of the elevator car stands in the relation of vice-principal to such owner.

3. SAME—*when evidence tends to show that master was negligent.* Evidence that the engineer in charge of passenger elevator machinery and having authority over the elevator boy, ordered the latter to run the elevator up and down while he, the engineer, was working with the machinery to get the car to run properly, and that while so doing the car suddenly rose from the bottom of the shaft to the top, throwing the boy out and injuring him, tends to show negligence on the part of the engineer in ordering the boy to run the elevator at that time.

4. SAME—*effect of absence of direct testimony of negligent act.* The absence of direct testimony that an engineer, in working with elevator machinery, loosened certain nuts with a monkey-wrench, is not fatal to the plaintiff's case, where the plaintiff testifies the engineer went into the motor room with a monkey-wrench and expert machinists testify the loss of control over the car must have arisen from unscrewing the nuts with a wrench.

5. SAME—*rule that servant assumes risks presupposes that master has used due care.* The rule that a servant assumes the ordinary risks incident to the business presupposes that the master has performed the duties of care and caution cast upon him by law.

6. SAME—*what risks are not assumed by servant.* A servant does not assume risks which may be obviated by the adoption of reasonable measures of precaution by the master, nor risks which are extraordinary, or extrinsic to the business, nor those of the master's own negligence.

7. SAME—*law does not imply notice of dangers arising out of extraordinary circumstances.* While a servant assumes risks of known dangers, or of those so obvious that knowledge of their existence may be fairly implied, yet the law does not imply that he has any notice of dangers arising out of extraordinary conditions.

8. SAME—*what not an ordinary risk in running elevator.* The risk arising from running a passenger elevator under orders from the engineer, who was in authority, while the latter was working with the machinery endeavoring to get the car to run properly, is not an ordinary risk of the business.

9. SAME—*mere knowledge of defects does not defeat right of recovery.* A servant is not chargeable with contributory negligence even if he knows that a defect exists, if he does not know, and cannot know by the exercise of ordinary prudence, that risks exist.

10. SAME—*effect where servant has some knowledge of attendant danger.* Even if a servant has some knowledge of attendant danger, his right of recovery will not be defeated if, in obeying the master's orders, he acts with the degree of prudence which an ordinarily prudent man would exercise under the circumstances.

11. SAME—*settlement by lower courts of question of assumed risk is conclusive.* If the question whether the risk incurred by a servant was extraordinary or not is left by the instructions to the jury, its settlement by the lower courts is conclusive upon the Supreme Court.

12. FELLOW-SERVANTS—*in making repairs engineer is vice-principal.* If certain appliances and their repair are committed to the care of an engineer, the latter, in making such repairs, is not a fellow-servant of one acting under his orders by the master's direction.

13. SAME—*question of fellow-servants is one of fact where evidence conflicts.* The question whether the relation of fellow-servants exists in a particular case is one of fact, upon which the judgment of the lower court is conclusive, where the facts in the case are not conceded, but contested.

14. EVIDENCE—*jury must say whether circumstantial or direct evidence is entitled to the greater weight.* If the plaintiff introduces circumstantial evidence tending to show certain acts of negligence, and the defendant afterwards introduces direct evidence that such acts were not performed, it is a question for the jury to determine which evidence is entitled to the greater weight.

15. SAME—*when expert testimony is admissible.* Expert testimony as to the effect which certain changes and alterations in elevator machinery, claimed by the plaintiff to have been made by the engineer but denied by the latter, would have upon the operation of the elevator car, is admissible.

16. SAME—*when positive testimony does not necessarily overcome circumstantial evidence.* Positive testimony by an engineer that he did not touch certain nuts upon elevator machinery does not necessarily overcome circumstantial evidence that he did, consisting of the plaintiff's testimony as to the action of the car just before the accident, testimony of experts that the car would not have acted as it did had the nuts not been loosened, and testimony as to the condition of the machinery immediately after the accident.

200—7

17. SAME—*when evidence as to condition of machinery after accident is admissible.* Evidence as to the condition in which elevator machinery was found about three-quarters of an hour after the accident happened is admissible.

18. INSTRUCTIONS—*words "if the jury find, from the evidence," need not be repeated.* If the words, "if the jury believe, from the evidence," occur in the first of a series of clauses in an instruction it is not necessary to repeat them in each succeeding clause.

19. SAME—*effect of reference to declaration where one count was dismissed.* If one count of the declaration was dismissed in presence of the jury and no evidence was introduced in support thereof, a reference in an instruction to the declaration, or any count thereof, will be understood as referring to the counts not dismissed.

20. SAME—*party is estopped to complain of expressions he has induced the court to use.* If a party induces the court to use an expression in his instructions he is estopped to complain that the same expression was used in his opponent's instructions.

21. SAME—*when instructions are properly refused.* Instructions asked by the defendant are properly refused where they single out certain parts of the case in such a way as to withdraw the attention of the jury from other aspects of the case on which a recovery might be had.

22. PLEADING—*dismissed count is out of the case for all purposes.* A count struck out of the declaration by leave of court is out of the case for all purposes, and the declaration must afterwards be considered as though such count had not been in it.

*Slack* v. *Harris,* 101 Ill. App. 527, affirmed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal·from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

This is an action on the case, brought by the appellee against the appellant to recover damages for injuries, suffered by appellee, while engaged, as an employe of appellant, in operating a passenger elevator in a building on Randolph street in Chicago of which appellant was lessee, and in which building appellant conducted his business. The plea of general issue was filed. The trial resulted in verdict and judgment in favor of appellee for the sum of $2250.00. An appeal was taken to the Appellate Court where the judgment has been affirmed.

The present appeal is prosecuted from such judgment of affirmance.

The appellee was employed by the appellant to run the elevator up and down in the building, in which there were six floors or stories, for the purpose of carrying passengers. There was also in the service or employment of appellant an engineer by the name of George H. Neff, whose business it was, as engineer, to run the engine for the purpose of supplying the power for running and operating the elevator. The elevator was run by electricity. The electric machinery was on the roof, and, as one of the witnesses says, "with a little house built up there sheltering it, about four feet from a shaft where the elevator run up, four feet to one side; you get up to this room, where the electric machinery was, by getting off at the sixth floor and going around to a little pair of steps, and go up into the machinery room." The evidence of the appellee tended to show, that the elevator car did not stop even with the floor on the first or bottom story, and on the sixth or top story. The accident occurred on the 9th day of September, 1897, in the middle of the day. The evidence of the appellee tended to show that, at that time, the engineer went up in the elevator to the room, where the electric machinery was, on the roof for the purpose of trying to remedy or correct the failure of the elevator car to stop even with the floor and also a slight jar with which the elevator car would stop, when the lever, used for the purpose of moving the same, was thrown to the center; that the brake took hold a little too hard, making it uncomfortable for passengers; that, when the engineer went up to the machinery room, he took with him a monkey-wrench; that, after the engineer went up to the sixth floor and into the motor room, he called to the appellee, and told him to run the car up and down, and stop at each floor, which appellee did; that the elevator car, after thus being moved up and down by appellee, failed to stop even with the floors;

that appellee then went up to the sixth floor to report to the engineer, that the elevator lacked a foot and a half of coming to the main floor, and was told by him: "Go ahead and run it down and stop at each floor and see how near it will come to stop at each floor;" that, while appellee was so engaged in running the elevator up and down, the car began to rise rapidly, so that appellee was unable to control it, and finally it struck the roof, and appellee was precipitated out of the elevator some seven feet to the floor of the top story, and received the injuries, for which the present suit is brought. The evidence of the appellee also tends to show that, while the engineer was in the motor room, he was working with the machinery by screwing and unscrewing certain nuts upon the machinery with a view of tightening and loosening the brake; and that the effect of this manipulation of the machinery by the engineer was the cause of the loosening of the brake and of the inability of the appellee so to manage the lever as to control the elevator car. The evidence of the appellee also tends to show that, on the morning when the accident occurred, the appellant told appellee that he was subject to the orders of the engineer, and must do as the engineer told him. Indeed, the evidence of the appellee tends to show that appellant had reproved him for not obeying the engineer, and had said to him: "You do as the engineer says, or else I don't want you; you are under him."

The evidence of the appellant tended to show that the engineer did not touch the machinery or appliances in the motor room, except to oil them, and that he had no monkey-wrench, and gave no orders to appellee to run the elevator up and down the shaft, while he was engaged in oiling it.

The declaration consists of three counts. The first count charged that the engineer, whose duty it was to oversee the electric machinery, and manage the same, and see that the elevator was in a reasonably safe con-

dition to be controlled by appellee as the operator thereof, was an unskillful, ignorant and incompetent person. But, during the course of the trial, the first count of the declaration was withdrawn, or dismissed.

The second count, which averred that the elevator was run by electric power and machinery located on the top of the building, intended to be controlled by means of a lever operated by the elevator man from inside of the elevator, charged that appellant carelessly and negligently failed to use reasonable care to have the elevator in reasonably safe condition for appellee to control the same, but, on the contrary, permitted it to be in such defective condition that it was not controllable by the lever, although, by the use of due diligence, appellant could easily have known of the defective condition of the elevator, and could easily have remedied the defects before plaintiff was injured.

The third count averred and charged, that appellant "had also then and there in his employ a certain engineer, whose duty it was to take charge of the electric machinery, which ran the said elevator, which machinery was situated near the top of the shaft in which said elevator ran; and the plaintiff, in the course of his said employment, was then and there subject to the orders of the said engineer, and under obligations to obey the directions of the said engineer. And the defendant, by the said engineer and by divers other servants in that behalf, then and there attempted to make certain changes and alterations in the electric machinery of the said elevator, and, in so doing, loosened and altered the position of divers nuts, bolts and screws upon the said machinery, and disconnected divers switches, keys, wires and brushes upon the said machinery, and removed from their position divers brakes, controllers, automatic stops, connections, ropes, cables, wheels, drums and appliances upon the said machinery, so that, by reason of the condition of said machinery so produced, it was dangerous for any

person to be upon the said car of the said elevator, or to attempt to operate the same by means of the said lever upon the said elevator; of all of which the defendant, by due care and diligence, would have been aware, but of which the plaintiff was then and there ignorant. Whereupon it became and was the duty of the defendant not to place the plaintiff upon the said elevator, or order him to operate the lever upon the said elevator, while the said machinery was in the said dangerous condition. Yet, nevertheless, the defendant, by his certain servants in that behalf, who were not fellow-servants of the plaintiff, then and there, while said machinery was in the said dangerous condition, carelessly and negligently ordered and directed the plaintiff to be upon the said elevator, and to operate the same by means of the said lever; whereby, while the plaintiff was with all due care and diligence upon the said elevator, and attempting to operate and control the same by means of the said lever, in obedience to the said orders of the defendant, the said elevator, by reason of the dangerous condition of the said machinery hereinbefore set forth, became uncontrollable, so that the plaintiff could not control the same by means of the said lever; and thereby the said elevator rose with great rapidity and struck with great force and violence against the upper part of the works of the said elevator machinery; and thereby the plaintiff was thrown out of the said elevator with great force and violence to the floor of the said building there, and was thereby greatly hurt," etc.

AMERICUS B. MELVILLE, for appellant:

Plaintiff assumed the risks of the work at which he and the engineer were engaged at the time the accident happened, if his testimony is to be believed. *Bridge Co.* v. *Walker,* 170 Ill. 550; *Coal Co.* v. *Haenni,* 146 id. 615; *Milling Co.* v. *Spehr,* 145 id. 329; *Coal Co.* v. *Milka,* 75 Ill. App. 638; *Hasty* v. *Sears,* 157 Mass. 123; *Dobbins* v. *Brown,* 119

N. Y. 188; *Railroad Co.* v. *Conway,* 76 Ill. App. 621; *Electric Co.* v. *Gallagher,* 68 id. 248; Wood on Master and Servant, sec. 326.

Negligence cannot be presumed. It must be proved, and proved as alleged in the declaration. Proof that an accident happened, and thereby appellee received an in-jury, is not proof of negligence. There was no evidence in this case as to what caused the elevator to shoot so rapidly to the top of the elevator shaft or what was the proximate cause of the injury to plaintiff. *Sack* v. *Dolese,* 137 Ill. 129; *Railroad Co.* v. *Wellhoener,* 72 id. 60; *Railroad Co.* v. *Houck,* id. 285; *Railroad Co.* v. *Driscoll,* 176 id. 330; *Spees* v. *Boggs,* 74 Atl. Rep. 875; *McClain* v. *Henderson,* 40 id. 985; *Dobbins* v. *Brown,* 119 N. Y. 188; *Graff* v. *Railway Co.* 76 id. 125; *Coal Co.* v. *Johnson,* 52 Ill. App. 383; *Ziech* v. *Hebard,* 67 id. 97; *Kuhns* v. *Railway Co.* 70 Iowa, 561.

Where an appliance failed to operate and the cause is unknown, negligence cannot be presumed from the fact of injury. *Redmond* v. *Lumber Co.* 96 Mich. 545.

The positive evidence of the engineer that he did not touch the machinery, and that he did nothing but oil it, is not overcome by the testimony of the expert witnesses as to what caused the accident, because the accident is not of such a nature that only persons of skill and expe-rience are capable of forming a correct judgment as to what the cause was. The opinions of the expert wit-nesses as to the cause of the accident were wholly in-competent. Their opinions were only conclusions, and therefore inadmissible. They could only testify as to the condition the machinery was in,—nothing more. The conclusions as to what caused the accident were to be drawn by the jury from all the facts. *Rockford* v. *Hilde-brand,* 61 Ill. 155; *Chicago* v. *McGiven,* 78 id. 347; *Hopkins* v. *Railroad Co.* id. 32; *Railway Co.* v. *Conroy,* 68 id. 560; *Rail-way Co.* v. *Moranda,* 108 id. 576; *Pennsylvania Co.* v. *Connell,* 127 id. 420; *Pennsylvania Co.* v. *Conlan,* 101 id. 93; *United States* v. *Pendergast,* 32 Fed. Rep. 198.

Plaintiff and the engineer were fellow-servants in their general employment, and especially were they such at the time plaintiff received his claimed injury, because, under the allegations of the declaration and under the personal testimony of plaintiff, he and the engineer were co-operating and working together upon the same work, to accomplish the same purpose. *Gall* v. *Beckstein,* 173 Ill. 187; *Hasty* v. *Sears,* 157 Mass. 123; *Ewan* v. *Lippincott,* 47 N. J. L. 192; *Abend* v. *Railroad Co.* 111 Ill. 202; *Railroad Co.* v. *May,* 108 id. 288; *Railroad Co.* v. *Moranda,* 93 id. 302; 108 id. 576; *Railroad Co.* v. *Driscoll,* 176 id. 330; *Spees* v. *Boggs,* 47 Atl. Rep. 875.

The fact that generally the engineer had control and direction over plaintiff in the ordinary running and operating of the said elevator did not prevent them from being fellow-servants in the work they were jointly doing about the elevator at the time the plaintiff received the claimed injury. *Railroad Co.* v. *Simmons,* 11 Ill. App. 147; *Railroad Co.* v. *Meyer,* 65 id. 531; *Meyer* v. *Railroad Co.* 177 Ill. 596; *Simmons* v. *Railroad Co.* 110 id. 340; *Fitzgerald* v. *Honkomp,* 44 Ill. App. 365; *Railroad Co.* v. *Swisher,* 61 id. 611; 74 id. 164; *Railroad Co.* v. *May,* 108 Ill. 288; *Fanter* v. *Clarke,* 15 Ill. App. 470; *Crispin* v. *Babbitt,* 81 N. Y. 516.

It is error to instruct the jury that if they believe the plaintiff has made out his case as laid in his declaration then the finding must be for him, when the declaration contains counts upon which there could be no recovery. *Railroad Co.* v. *McCarthy,* 66 Ill. App. 667.

FRANCIS J. WOOLLEY, for appellee:

An employee does not assume all the risks incident to his employment, but only such as are usual, ordinary, and remain so incident after the master has taken reasonable care to prevent or remove them, or if extraordinary, such as are so obvious and expose him to danger so imminent that an ordinarily prudent and careful man would anticipate injury as so probable that in view of it

he would not enter upon or remain in the employment. *Railroad Co.* v. *House*, 172 Ill. 601.

The rule that the servant assumes the ordinary risks incident to the business presupposes that the master has performed the duties of caution, care and vigilance which the law casts upon him. It is these risks alone, which cannot be obviated by the adoption of reasonable measures of precaution by the master, that the servant assumes. The law is, that a servant does not assume risks that are unreasonable or extraordinary, nor risks that are extrinsic to the employment, nor risks of the master's own negligence. *LaSalle* v. *Kostka*, 190 Ill. 130; *Swift* v. *O'Neill*, 187 id. 337; *Whitney & Starrette Co.* v. *O'Rourke*, 172 id. 177; *Steel Co.* v. *Bauman*, 178 id. 351; *Paving Brick Co.* v. *Hudson*, 176 id. 270; *Railroad Co.* v. *Dwyer*, 162 id. 482; *Stone Co.* v. *Muscial*, 196 id. 382.

In both criminal and civil cases a verdict may well be founded on circumstances alone; and these often lead to a conclusion far more satisfactory than direct evidence can produce. *Carlton* v. *People*, 150 Ill. 181; 1 Greenleaf on Evidence, sec. 13*a*.

It is misleading to declare that either direct or circumstantial evidence is, in a legal sense, inferior to the other. Both classes of testimony are indispensable in the administration of justice, and their relative value, depending upon the circumstances of the case, must be left to the jury. 3 Jones on Evidence, sec. 901, p. 1984.

The law makes no distinction between direct evidence of a fact and evidence of circumstances from which the existence of a fact may be inferred. Underhill on Crim. Evidence, sec. 6, p. 8.

Evidence as to the condition of the machinery immediately after the accident was admissible. *Bloomington* v. *Osterle*, 139 Ill. 120; *Railway Co.* v. *Dorsey*, 189 id. 251; *Fairbank Canning Co.* v. *Innes*, 24 Ill. App. 33; 125 Ill. 410.

The duty of the master to exercise reasonable care in providing safe instrumentalities where servants are re-

quired to work is a positive obligation towards the servant, and the master is liable for any failure to discharge that duty, whether he undertakes its performance personally or through another. *Leonard* v. *Kinnare*, 174 Ill. 537.

An instruction which omits to state that the jury must find, if they find at all, from the evidence, may be cured by other instructions which state that as a general rule. *Porter* v. *Brown*, 55 Ill. App. 142; *Durham* v. *Evans*, 56 id. 513; *Lindley* v. *Hitchings*, 78 id. 425.

Mr. CHIEF JUSTICE MAGRUDER delivered the opinion of the court:

*First*—It is claimed, on the part of the appellant, that the trial court erred in refusing to give to the jury at the close of appellee's evidence, and again at the close of all the testimony, a written instruction to find appellant not guilty. Whether or not it was erroneous to refuse this instruction depends upon the question, whether the evidence tended to support the cause of action.

There was evidence, tending to show that the appellant was guilty of such negligence as caused the injury to appellee. The engineer, Neff, stood to the appellant in the relation of a vice-principal to a principal, and was clothed by appellant with authority to give orders to the appellee and direct him in his control of the elevator car. The evidence, introduced by the appellee, tended to show that there was some defect in the working of the elevator car, which caused it to stop either too far above or too far below some of the floors, and to produce a jar at the time of so stopping. Appellee's evidence also tended to show that the engineer went up to the motor room on the roof for the purpose of attempting to remedy the defect, and, in doing so, so loosened some of the nuts or bolts upon the machinery, as to make it impossible for appellee, when operating the elevator car, to control the lever. This loosening of the brake is alleged to have caused the injuries in question. It appears

that these nuts were not loose before the engineer went up to the motor room, inasmuch as, prior to that time, the car could be properly operated with the exception of the defect already indicated. In other words, the evidence, introduced by the appellee, tends to show that the engineer, who was the representative and vice-principal of the appellant, was negligent in ordering appellee to run the elevator while the brake was loose.

It is true, that appellee, and Neff, the engineer, contradict each other. Appellee swears that the engineer went up to the motor room with a monkey-wrench, while the engineer denies that he had a wrench. It was for the jury to say which one of these witnesses told the truth. It is also true, that appellee did not see what the engineer did in the motor room, which was above the sixth floor, and that there is no direct testimony to the effect that the engineer loosened the nuts, and, as a consequence thereof, the brake. But expert machinists testified in the case, that the loosening of the nuts, which caused the lever to be uncontrollable, could not have been effected otherwise than by unscrewing the nuts with a wrench; in other words, that the manner, in which the nuts were loosened, showed design, and not accident. It is urged that this loosening may have been caused by the running up and down of the elevator car by appellee. But, if this were so, appellee was ordered thus to move the elevator car by the engineer, to whose orders he was subject. We discover no evidence in the record, that appellee was guilty of any want of ordinary care in his management of the elevator; and the testimony tends to show that whatever he did in the management thereof was under the orders and directions of the engineer. We are, therefore, of the opinion that the trial court committed no error in refusing to take the case from the jury.

*Second*—Appellant claims, that appellee assumed the risks of the work, and was injured by a condition that was one of the usual risks. It is true, as a general rule,

that the servant assumes the natural and ordinary risks of the business, in which he engages. He assumes all the risks ordinarily incident to the employment, and is presumed to have contracted with reference to such risks. (*Pullman Palace Car Co.* v. *Laack*, 143 Ill. 242; *Consolidated Coal Co.* v. *Haenni*, 146 id. 614). But the rule, that the servant assumes the ordinary risks incident to the business, presupposes that the master has performed the duties of caution, care and vigilance which the law casts upon him. The servant only assumes those risks, which can not be obviated by the adoption of reasonable measures of precaution by the master. He does not assume risks that are unreasonable or extraordinary, nor risks that are extrinsic to the employment, nor those of the master's own negligence. (*City of LaSalle* v. *Kostka*, 190 Ill. 130). While it is true, that a servant assumes risks of known dangers, such as are so obvious that knowledge of their existence may be fairly presumed, yet the law does not imply that he has any notice of dangers arising out of extraordinary circumstances. (*Chicago and Alton Railroad Co.* v. *House*, 172 Ill. 601; *Illinois Steel Co.* v. *Bauman*, 178 id. 351). It has been said, that "an employe does not assume all the risks incident to his employment, but only such as are usual, ordinary, and remain so incident, after the master has taken reasonable care to prevent or remove them, or if extraordinary, such as are so obvious and expose him to danger so imminent, that an ordinarily prudent and careful man would anticipate injury as so probable that, in view of it, he would not enter upon or remain in the employment." (*Chicago and Alton Railroad Co.* v. *House*, *supra; Alton Paving Brick Co.* v. *Hudson*, 176 id. 270; *West Chicago Street Railroad Co.* v. *Dwyer*, 162 id. 482).

Here, it cannot be said that the running of the elevator car by the appellee, under the circumstances already narrated, was merely an ordinary risk of the business. The danger to be incurred was not such a danger as was

necessarily incident to the ordinary operation of the elevator car, but was an extraordinary risk, arising out of the circumstance of loosening the nuts and other portions of the machinery by the engineer, as a vice-principal, for the purpose of remedying a known defect.

It is said that appellee had notice of the fact, that the elevator car did not stop on a level with the different floors of the building, and that, when it did stop, the stoppage was accompanied by a jar. But, while it may be true that an employe has notice of a defect, it does not necessarily follow that he has any knowledge of the risk, which may result from such defect. The servant is not chargeable with contributory negligence, if he knows that defects exist, but does not know, and cannot know by the exercise of ordinary prudence, that risks exist. (*Illinois Steel Co.* v. *Schymanowski*, 162 Ill. 447). In *Swift & Co.* v. *O'Neill*, 187 Ill. 337, we said, in regard to the right of a servant to recover for injuries incurred while working in an unsafe place: "Although he may know of the defects, yet unless, under all the facts and circumstances of the case, it can be said he knew of the extent of the danger, he may still maintain his action." (*Union Show Case Co.* v. *Blindauer*, 175 Ill. 325). It does not appear, in the case at bar, that appellee had any knowledge of the danger or risk that would result from the operation of the elevator car, while the engineer was engaged in an attempt to remedy its defective condition.

Again, a master is liable to a servant, when he orders the latter to perform a dangerous work, unless the danger is so imminent that no man of ordinary prudence would incur it. Here, the appellee received orders from the engineer, under whose control and direction he was placed by the appellant, as to how he should operate the elevator upon the occasion in question, and also received orders to so operate it while it was undergoing repair. Even where a servant has some knowledge of attendant danger, his right of recovery will not be defeated, if, in

obeying the order, he acts with the degree of prudence, which an ordinarily prudent man would exercise under the circumstances. (*Illinois Steel Co.* v. *Schymanowski, supra; Union Show Case Co.* v. *Blindauer, supra; Consolidated Coal Co.* v. *Haenni, supra; Swift & Co.* v. *O'Neill, supra*).

The question, however, whether the risk incurred by the appellee was one of the usual and ordinary incidents of his employment, was left by the instructions to the jury; and, as it is a question of fact, its settlement by the lower courts in favor of the appellee is conclusive upon this court. It is a proper question to be left to the jury, under all the evidence, whether the risk is assumed, or not. (*Swift & Co.* v. *O'Neill, supra; Western Stone Co.* v. *Muscial,* 196 Ill. 382).

*Third*—It is next contended by the appellant, that the appellee and the engineer were fellow-servants, and, upon this account, the appellant was not responsible for the negligence of the engineer, even if the injury was caused thereby. The alleged ground, upon which they are claimed to be fellow-servants, is that they were working and co-operating together for the purpose of remedying the existing defect in the operation of the elevator car. This contention ignores the fact, that appellee was, by the express direction of the appellant, acting under the orders of the 'engineer. Where the vice-principal, appointed by the master, abdicates his position as vice-principal, and acts as a co-laborer with the servant, it is held, in some instances, that he becomes a fellow-servant with the latter, and that, in such case, the master is not responsible for his negligence. But where the negligent act complained of results directly from the exercise by the vice-principal of the authority conferred upon him by the master over his co-laborer, the master will be liable. (*Chicago and Alton Railroad Co.* v. *May,* 108 Ill. 288; *Norton Bros.* v. *Nadebok,* 190 id. 595; *Union Show Case Co.* v. *Blindauer, supra; Westville Coal Co.* v. *Schwartz,* 177 Ill. 272; *Morton & Co.* v. *Zwierzykowski,* 192 id. 328).

Where certain appliances and their repair are committed to the care of an engineer, the latter, in performing that duty, is the representative of the master and a vice-principal, and not the fellow-servant of those, who are required to use the appliances, furnished to them by the engineer; and, in such case, the engineer, as to his separate duties of making the repairs, is not a fellow-servant of a plaintiff acting under his orders. (*Morton & Co.* v. *Zwierzykowski, supra; Metropolitan Elevated Railroad Co.* v. *Skola*, 183 Ill. 454; *Pittsburg Bridge Co.* v. *Walker*, 170 id. 550). Where a vice-principal or superintendent determines to do a work in a dangerous manner, his determination is that of the master, and the master in such case is liable for the negligent acts of the vice-principal. "A servant, ordered by one in authority to do a dangerous act, is not required to balance the degree of danger and decide with absolute certainty, whether he may safely do the act, and, even if he had knowledge of such danger, it would not defeat a recovery for injury, if, in obeying his master's command, he acted with that degree of prudence, which an ordinarily prudent man would have used under the same circumstances." (*Illinois Steel Co.* v. *McFadden*, 196 Ill. 344, and cases there cited).

But, in addition to what has already been said, the question whether or not appellee and the engineer were fellow-servants, under the facts of the present case, was a question of fact, which was submitted to the jury under the instructions of the court, and has been finally settled by the judgments of the lower courts. (*Norton Bros.* v. *Nadebok, supra; West Chicago Street Railroad Co.* v. *Dwyer*, 162 Ill. 482; *Wenona Coal Co.* v. *Holmquist*, 152 id. 581; *Whitney & Starrette Co.* v. *O'Rourke*, 172 id. 177). Instruction numbered 28, asked by, and given for, the appellant, was as follows:

"If the jury believe from the evidence that the plaintiff and the engineer, at the time of the injury, were in the employment of defendant, and were fellow-servants

as explained in these instructions, and that their ordinary duties as such servants bore such relation to each other that the careless or negligent act of the engineer endangered the safety of the plaintiff, then such danger was incident to the employment of the plaintiff, and he cannot recover in this case, if the injury in question resulted from such negligent acts."

The jury have found by their verdict that the relation of fellow-servants did not exist between appellee and the engineer. The question, whether the relation of fellow-servants exists, only becomes a question of law, and not of fact, when there is no dispute with reference to the facts, and when the evidence and the legitimate conclusions to be drawn therefrom are such, that all reasonable men will agree to the existence of the relation of fellow-servants. (*Chicago and Eastern Illinois Railroad Co.* v. *Driscoll*, 176 Ill. 330; *Norton Bros.* v. *Nadebok, supra*). In the case at bar, the facts are not conceded, but are hotly contested.

*Fourth*—Appellant furthermore claims, that the court below erred in admitting expert testimony in regard to the effect of the changes and alterations in the machinery, alleged to have been made by the engineer, upon the operation of the elevator car. Such testimony in such cases has been held by this court and by other courts to be admissible. (*Union Show Case Co.* v. *Blindauer, supra; McGregor* v. *Reid, Murdoch & Co.* 178 Ill. 464; *Jacksonville, etc. Railway Co.* v. *Peninsular Land Co.* 27 Fla. 85). Nor can it be said that, in such cases as the case at bar, circumstantial evidence is always necessarily overcome by positive evidence. The contention of appellant upon this branch of the case is, that the evidence of the engineer, being positive, overcomes the circumstantial evidence on the side of the appellee, consisting of appellee's own testimony as to the action of the machine just before the accident, and the testimony of the experts as to the condition of the adjustment of the brake and automatic stop as they were found immediately after the

accident, and to the effect that the machine could not have acted as it did unless these adjustments had been changed. In criminal, as well as in civil cases, a verdict may well be founded on circumstances alone; and it is misleading to declare that circumstantial evidence, tending to prove negligence, is inferior to, or outweighed by, direct evidence. Where circumstantial evidence, tending to show negligence, is introduced by the plaintiff, and the defendant afterwards introduces direct and positive evidence tending to show the contrary, it is a question for the jury to determine which evidence is entitled to the greatest credit. (*Carlton* v. *People*, 150 Ill. 181; 1 Greenleaf on Evidence, sec. 13*a*; 3 Jones on Evidence, sec. 901; *Jacksonville, etc. Railway Co.* v. *Peninsular Land Co. supra; Atchison, Topeka and Santa Fe Railroad Co.* v. *Bales*, 16 Kan. 252; *People* v. *Harris*, 136 N. Y. 429).

It is also contended that the court below erred in admitting testimony as to the condition of the machinery immediately after the accident. The court committed no error in this regard. The main expert examined the condition of the elevator, and of the machinery, in about three-quarters of an hour after the accident happened. In *St. Louis, Peoria and Northern Railway Co.* v. *Dorsey*, 189 Ill. 251, we said (p. 254): "The condition of the brake apparatus at the exact time of the accident was, of course, the material inquiry, but evidence as to its condition shortly before or after that time, would fairly tend to prove its condition at the particular moment of the accident. There is nothing in the evidence to the effect that changes did occur or might have occurred in the brake appliance after the accident and the time the witnesses saw it. We think the testimony was competent. The weight to be given it was for the jury to determine." (See also *City of Bloomington* v. *Osterle*, 139 Ill. 122; *Fairbank Canning Co.* v. *Innes*, 125 id. 410).

Instructions numbered 35, 36 and 37, asked by the appellant and refused by the court, were properly refused,

because they announced views in regard to the expert testimony in the case contrary to those here expressed.

*Fifth*—It is charged that the trial court erred in giving certain instructions, which were given on behalf of the appellee. Two criticisms are made upon these instructions, as we understand counsel. The first criticism is, that the instructions, which consist of a number of clauses, are so framed that the jury might well have concluded, that they were authorized to find the facts in one of these clauses whether they should so find them from the evidence or not. We are of the opinion that the instructions are not justly subject to the criticism thus made upon them. The instructions use the words, "if the jury find from the evidence," at the beginning of the series of clauses, and these words evidently refer to and include all the clauses. It is not necessary to tell the jury in each sentence of an instruction that they must believe from the evidence. "If the first part of an instruction contains a clause requiring them to make a finding from the evidence, a jury of intelligent men will not be misled by the omission of such a clause in the remaining portion of the instruction." (*Rock Island and Peoria Railway Co.* v. *Leisy Brewing Co.* 174 Ill. 547, and cases cited on p. 561).

The second criticism is, that the instructions are so worded that the jury could reasonably infer that they were to consider the negligence of the appellant, as charged in the first count of the declaration, as well as in the second and third counts. Counsel for appellee, during the trial of the case, dismissed or withdrew the first count of the declaration in the presence of the jury, and it was well understood that the appellee did not seek to recover under the allegations of the first count of the declaration. Two of the instructions complained of in this respect confined the attention of the jury in express words to the second and third counts of the declaration. Another of the instructions complained of re-

fers to the negligence of appellant "alleged and proved in this case." As no proof was introduced in support of the allegations of the first count, the jury could not have inferred that the instruction in question referred to the first count. The instructions confined their attention to what was alleged and proved, and, therefore, had no reference to the first count. All references in instructions to the pleadings are to be understood as referring to the pleadings in the condition, in which they are at the time of the trial. Where one count of a declaration has been dismissed, a reference in an instruction to the declaration, or any single count thereof, will be understood to refer only to the counts not dismissed. In *North Chicago Street Railway Co.* v. *Hutchinson*, 191 Ill. 104, we said: "At the time the instruction was given, the second and third counts had been eliminated from the declaration by the dismissal, and it can hardly be assumed that the jury would understand the instruction to refer to such dismissed counts." Where a count is struck out of a declaration by leave of court, it is out of the case for all purposes, and the declaration must afterwards be considered as if that count had never been introduced. (1 Ency. of Pl. & Pr. 621, 626; *Prescott* v. *Tufts*, 4 Mass. 145; *Brown* v. *Feeter*, 7 Wend. 304; *Colvin* v. *Peck*, 62 Conn. 155).

But if there was any error in this respect in the instructions complained of, which were given for appellee, the appellant is estopped from insisting upon the objection, because the same defect existed in one or more of the instructions, asked by the appellant and given for him. For instance, instruction numbered 19, given for the appellant, requires the jury to determine "whether defendant was guilty of the negligence charged in the declaration." In this instruction the declaration is referred to as a whole, without specifically designating the second and third counts thereof. Where a party has induced the trial court to use a certain expression in the instructions, he ought not to be heard to complain of the

court's action.    (*North Chicago Street Railway Co.* v. *Hutchinson, supra; Consolidated Coal Co.* v. *Haenni,* 146 Ill. 614).

The refusal of instructions numbered 38 and 39, asked by the appellant, is also charged to be error. These instructions were properly refused, because they single out certain parts of the case in such a way, as to withdraw the attention of the jury from other aspects of the case, on which a recovery might be had. In other words, the instructions, in conditioning the liability of the appellant upon the existence of certain facts, ignore altogether the fact, that the engineer was the vice-principal and representative of the appellant, and that the negligent orders of the engineer, as such vice-principal, contributed to cause the injury.

After a careful examination of the record, we find no such error as would justify us in reversing the judgment of the Appellate Court. Accordingly, the judgment of the Appellate Court is affirmed.    *Judgment affirmed.*