## Illinois Southern Railway Company v. Alta Marshall, Admx.

1. FELLOW-SERVANTS—*when question as to who are, is one of law.*
The question whether the relation of fellow-servants exists only becomes
a question of law when there is no dispute with reference to the facts
and when the evidence and the legitimate conclusions to be drawn
therefrom are such that all reasonable men will agree to the existence
of the relation of fellow-servants.

2. FELLOW-SERVANTS—*when ordinary laborer and his foreman are
not.* Where the vice-principal appointed by the master, abdicates his
position as vice-principal, and acts as a co-laborer with a servant, it is
held in some instances that he becomes a fellow-servant with the latter
and that in such case the master is not responsible for his negligence;
but where the negligent act happened or resulted directly from the ex-
ercise by the vice-principal of the authority conferred upon him by the
master over his co-laborer, the master will be liable.

Action on the case for death caused by alleged wrongful act. Appeal
from the Circuit Court of Randolph County; the Hon. WILLIAM HART-
ZELL, Judge, presiding. Heard in this court at the August term, 1903.
Affirmed. Opinion filed March 10, 1904.

F. M. TRISSAL and R. J. GODDARD, for appellant.

M. W. BORDERS, for appellee.

MR. JUSTICE HIGBEE delivered the opinion of the court.

This was a suit brought under the statute, by appellee, as
administratrix of the estate of her late husband, William S.
Marshall, to recover damages for his death, alleged to have
been caused by the negligence of appellant. There was a
verdict and a judgment in the court below in favor of ap-
pellee, for $5,000.

The proof showed that on February 3, 1902, Marshall
was a member of a bridge gang employed by appellant to
operate a pile driver along the line of its road. On that
day there were eleven men engaged in this work. The pile
driver was attached to the front end of an ordinary flat car
and consisted of two heavy upright beams, called leads,
some thirty feet high, between which a large hammer

worked up and down. These leads, when in position for work, were swung out over one end of the car, the lower ends reaching to within four to six inches of the ground. The leads could be swung from one side of the track to the other, so that a pile could be driven either within or without the rails. When in an upright position, the leads were supported by two props, or "legs" as they were called.

The power used in operating the pile driver, was furnished by a stationary engine placed on the rear part of the car. Ordinarily, when the car was to be moved, the leads of the pile driver were lowered or turned back over the car and allowed to rest on the "lead rest," which was constructed expressly for that purpose and stood about eight feet above the deck of the car. When they were to be lowered, they were first swung around to the center, then one end of a strong rope was attached by a hook to an iron yoke placed near the bottom of the leads. The other end of the rope was then drawn taut about a spool operated by the stationary engine, the props which supported the leads knocked out, and the leads gradually lowered to the lead rest above the car. It was one of the duties of Marshall to knock out the props when the leads were to be lowered. In doing so he necessarily stood upon the car and his position was such that he could not see when the rope was fastened to the yoke, but acted under the orders of the foreman, whose duty it was to notify him of the proper time to knock out the props. Newton Harben was, at the time, appellant's superintendent of bridges and building, and his son, Mabre M. Harben, was foreman of the gang of men operating the pile driver. Among the men composing the gang was Fred Hoff, a carpenter. His work appears to have required him to be upon the ground near the front of the car, and one of his duties was to attach the hook at the end of the rope, into the iron yoke, whenever the leads were to be lowered. On the day Marshall was injured, the engineer of the stationary engine being absent, Newton Harben placed his son, Mabre, in charge of the engine, and gave Fred Hoff control of the men engaged in driving the

piles. In this position, Hoff had authority to give orders and directions concerning the work to all the men, except the engineer. About the time for closing the day's work, the men having just finished driving a pile outside of the track and a passenger train being about due, Hoff gave orders to them to gather up their tools, place them on the car and swing the leads to the center. He also signaled the engineer of the locomotive, which accompanied the car, to couple on to the car and pull off the bridge. The leads were swung to the center, and the rope used to lower them, tightened. The hook in the rope was, however, at the time, fastened to the draw-bar underneath the car, Hoff having neglected to attach it to the iron yoke on the leads. Marshall then proceeded to knock out the props, and the leads, not having the rope to hold and ease them down, fell upon him, inflicting injuries, from which he subsequently died. It is claimed by appellee that Hoff gave the order to lower the leads just prior to the time Marshall knocked out the props.

The only question presented to us for determination by counsel for appellant is whether the foreman, Hoff, through whose negligence the injury occurred, was a fellow-servant with Marshall, and should be so found to be as a matter of law. Appellant insists that notwithstanding the fact that Hoff was made foreman of the men driving the piles on the day of the injury, yet in hooking the rope onto the iron yoke and giving the signal to lower the leads, he was only doing his customary work, and when engaged therein, must be considered as a fellow-servant of Marshall. Ordinarily, Hoff had no power to direct the men to lower the leads but on this occasion he was vested with power to give directions to them, concerning the work, and it was their duty to follow his directions. The declaration charged that the injury occurred as the immediate result of the negligence and carelessness of Hoff, both in failing to hook the rope into the iron yoke and in giving the order to lower the leads.

The contention of appellant that under the proofs in this case the question as to whether or not Hoff and Marshall

were fellow-servants, is one of law, cannot be sustained. "The question whether the relation of fellow-servants exists, only becomes a question of law and not of fact, when there is no dispute with reference to the facts, and when the evidence and the legitimate conclusions to be drawn therefrom are such that all reasonable men will agree to the existence of the relation of fellow-servants." Slack v. Harris, 200 Ill. 96; C. & E. I. R. R. Co. v. Driscoll, 176 Ill. 330.

We are not prepared to say from the proofs in this case, that all reasonable men would agree that the relation of fellow-servants existed between Hoff and Marshall. While Hoff testified that he did not give the order to lower the leads on the occasion in question, the preponderance of the evidence was that he did give such order. Even if it should be conceded that Hoff, in continuing to take upon himself the duties of attaching the rope to the iron yoke, was acting in the capacity of a fellow-servant of Marshall, yet that was not his only duty, and when he gave orders to the men under his control, he was acting as foreman and vice-principal of appellant. "Where the vice-principal appointed by the master, abdicates his position as vice-principal, and acts as a co-laborer with the servant, it is held, in some instances, that he becomes a fellow-servant with the latter, and that, in such case, the master is not responsible for his negligence. But where the negligent act complained of results directly from the exercise by the vice-principal of the authority conferred upon him by the master over his co-laborer, the master will be liable." Slack v. Harris, supra; Chicago & Alton Railroad Company v. May, 108 Ill. 288; Norton Bros. v. Nadebok, 190 Ill. 595.

Whether the injuries to Marshall were caused by the negligence of Hoff while acting as the vice-principal of appellant or by his negligence when acting as a fellow-servant of Hoff, were questions of fact for the jury. The facts were found by the jury in favor of appellee, and as there was ample evidence to sustain the finding, we cannot disturb their verdict.

The judgment of the court below will be affirmed.

*Affirmed.*