## Elgin, Joliet & Eastern Railway Company v. William H. Myers.

### Gen. No. 4,659.

1. SERVANT—*how question as to knowledge of defective condition of machinery to be determined.* Whether the servant who has received an injury from a defect in machinery at which he was employed, had knowledge of the defective condition of such machinery, is a question of fact to be determined by the jury from all the evidence adduced.

2. ASSUMED RISK—*upon what doctrine of, predicated.* The rule that the servant assumes the ordinary risks incident to the work he engages to do presupposes that the master has exercised the care, caution and vigilance which the law requires of the master. A servant only assumes those risks which cannot be obviated by the adoption of reasonable measures of precaution by the master.

3. EXPERT TESTIMONY—*when competent.* Expert testimony is competent as to matters which do not lie within the range of that common knowledge and experience which the jury is supposed to possess.

Action in case for personal injuries. Appeal from the Circuit Court of Will county; the Hon. ALBERT O. MARSHALL, Judge, presiding. Heard in this court at the April term, 1906. Affirmed. Opinion filed October 16, 1906.

J. L. O'DONNELL and T. F. DONOVAN, for appellant; KNAPP, HAYNIE & CAMPBELL, of counsel.

DONAHOE, McNAUGHTON & McKEOWN, for appellee.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

William H. Myers was employed as a carpenter in the car shops of the Elgin, Joliet & Eastern Railway Company at Joliet. On December 1, 1903, while he was working in said shops, he lost two fingers of his right hand, and had the muscles and tendons of the other two fingers of said hand severed, upon a circular rip saw. He brought this suit against the railway

company to recover damages for said injuries. The declaration contained seven original and two additional counts. The jury, by direction of the court, found defendant not guilty under the fourth and sixth original counts and under the two additional counts. Each of the other counts described the saw, and set out defects therein, and averred that plaintiff had no notice thereof and that defendant had notice or by the exercise of ordinary care could have well known thereof. Each of said counts averred that while plaintiff was engaged in sawing or ripping a piece of timber, with said saw and its appliances so out of repair, and while exercising due care for his own safety, said saw became caught or bound in said piece of timber, thereby causing said piece of timber to jump violently backward, and plaintiff's right hand was thereby, through the said carelessness and negligence of defendant, jerked violently across and upon the teeth of said saw, and the wounds in question were thereby inflicted upon plaintiff. The fifth count charged generally that defendant carelessly and negligently allowed said saw and said machinery and appliances connected therewith to be and remain in bad and dangerous repair and condition. The other counts contained that allegation with specifications, viz., that the guide or gauge of said saw was not of sufficient length and did not extend far enough past the saw proper as distinguished from the operating machinery of the same; that a tooth was allowed to be and remain out of said saw; and that the guide or gauge of the saw was not properly and carefully fixed and adjusted. There was a plea of not guilty, a jury trial, and a verdict for plaintiff assessing his damages at $4,000, from which plaintiff was required by the court to remit $1,000. A motion for a new trial was then denied, plaintiff had judgment for $3,000, and defendant appeals.

The appliances in question consisted of a steel table,

underneath which was a revolving shaft running east
and west and in which table was a groove or slot in
which a circular saw revolved. The center of this saw
was attached to the shaft underneath the table, and
only a few inches of the upper part of the saw came
above the table. The operator stood at the north end
of the table, facing south. He pushed the piece to be
sawed or ripped against the saw, the upper part of
which revolved towards him. The saw made about
twelve hundred revolutions per minute. On the right
hand of the operator was a gauge, by which the width
of the piece to be sawed was controlled. This saw was
not used all the time, nor by any one employe. Each
carpenter came to it when he wished to do a piece of
work for which that machine was adapted. It was not
the only rip saw in the shops. There were two re-
spects in which the gauge could be set. By the ad-
justment of certain apparatus the gauge could be
placed exactly parallel with the saw, or it could be
placed somewhat out of line with the saw with the
back end of the gauge farther from the saw than the
end nearest the operator, giving what is called a clear-
ance. This setting was done only by the foreman. The
other setting of the gauge was to move it bodily
towards the saw or from it. Each carpenter made this
adjustment of the gauge according to the width he
wished to cut. There were five ordinary circular saws
and one other saw of special thickness hanging on a
post near the table. When a carpenter came to the
table with a timber or board or piece of wood which
he wished to cut or rip, he selected the saw which was
needed to do his work, put it on the shaft, set the
gauge to the required width, placed the timber
against the saw, applied the power by means of a lever,
and pushed the timber against the saw, and kept up the
pressure till the saw had severed the piece. The gauge
on this machine had a clearance of one-quarter of an
inch, that is, the back end of the gauge was a quarter

of an inch further from the saw than its front end.

The evidence for plaintiff tended to show that these appliances had the following defects: (1) It was a defect to give the gauge a clearance of a quarter of an inch; it should either be set parallel with the saw or the clearance, if any, should be much less. (2) The end of the gauge furthest from the operator extended back only to a point opposite the center of the saw, whereas in order to properly perform its function it should have gone one-third of its length past the center of the saw. (3) There was nothing to prevent the parts of the wood from coming together back of the saw blade, and pinching the saw, whereas the machine should have a contrivance called a splitter upon the table back of the saw to fit into the slit of the board or timber and prevent it from closing. (4) A tooth of the saw was out. This left a space of four inches in the outer rim of the saw; and where, as here, a stick much less than four inches thick was being cut, this would permit the tooth following the vacancy to catch on the side of the slit in the stick and raise it and throw it to the north over the top of the teeth. (5) The points of some of the teeth had been knocked off, and the outer circumference of the saw therefore did not perform a perfect circle. (6) The saw was core bound. The outer circumference had been expanded from heat or some other cause, while the center had not. The middle of the saw was too small for its outer rim, and this caused the saw to "wobble" when in use.

On the day in question plaintiff was using this saw. Eyrick, a fellow-carpenter, came to the saw and asked plaintiff to let him rip a piece which was two and a quarter inches high. Plaintiff had orders to give way when a man wanted work done, and he did so. Plaintiff's proof is that as soon as Eyrick began to saw, the stick began to pound upon the table. Eyrick wanted to rip his stick off an even width, and this could only

be done by holding it to the gauge, which required the application of external force because of the clearance already described. Plaintiff had orders to assist a fellow-workman who needed help. He had run pieces like that through that machine, but never without a helper, and he had been instructed not to do it without a helper. Plaintiff stepped to the east side of the table, back of the saw, and placed both hands palms downward upon the piece then being ripped, and pressed it back against the gauge, and at the same time bore down upon it to keep it from jumping from the table, as the rapping indicated it was doing. While plaintiff was so helping Eyrick the piece raised up and was carried north over the teeth of the saw. This may have been because the tooth next back of the vacant space where the tooth had been broken out caught on the east side of the slit in the board as plaintiff pushed west to hold it against the gauge; or because, for lack of a splitter, the sides of the board came together back of the saw, and pinched it; or because of the "wobbly" condition of the saw and the uneven condition of its outer rim and of its broken teeth; or all of these conditions may have contributed to lift the timber upon the teeth. Plaintiff was bearing down and pushing, and the accident occupied but an instant of time. Plaintiff's little finger and the one next to it came in contact with the upper edge of the saw, and were only cut to the bone. The board seems then to have gone down over the saw, and the remaining fingers of that hand were severed entirely or were left hanging by a little skin.

Eyrick testified for defendant that the stick did not jerk or jump, and that plaintiff's hand came so close to the saw that it caught his glove; and the argument for defendant seems to assume that on this question there is only the opposing testimony of plaintiff and Eyrick. But Joseph Jones testified for plaintiff that at the time of the accident he was at work about twen-

ty-five feet away; that he heard the stick striking on the table and knew by the sound what it meant; that he glanced that way, and could see the stick bouncing; that he then took his foot off the treadle of his own machine, and heard a different sound and looked up instantly and saw that plaintiff was hurt. Again, if plaintiff had been hurt as Eyrick claims, it is difficult to see why the little finger and the one next to it were not cut off. The character of the injuries seems to support plaintiff's proof as to the manner in which they were inflicted. Defendant's witnesses did not contradict the testimony as to defects given by plaintiff's witnesses as above stated; but defendant did introduce proof tending to show that a clearance in the gauge of such machines was proper and usual, and that Eyrick did not need nor ask for plaintiff's help.

The dished and warped condition of the saw and the absence of a splitter were not set out in any of the specifications contained in the first, second, third and seventh counts of the declaration; and that dished and warped condition was set out in the fourth count, as to which the jury under the direction of the court found defendant not guilty. But we conclude this dished and warped and "wobbly" condition of the saw and the absence of a splitter were also competent under the general allegations of the fifth count. We are of opinion that the proof introduced by plaintiff as to the manner in which he was hurt was all competent under the counts of the declaration upon which the verdict for plaintiff was based; and that a consideration of the entire testimony would not authorize us to say that the jury should not have found that he was injured in the manner described.

Plaintiff had been a house carpenter most of his life. He had worked for defendant several years. Most of that time he had not worked in the shop, but outside on repair work. At the time he received this injury he had worked in the shop continuously six or

seven months. In some places in the abstract it is implied that while in the shop he worked continuously at this machine, but a careful examination of the evidence in the record shows that this is not correct. When in his work elsewhere he had pieces to be split or ripped and the size of the pieces and character of the required work was such that any of these six saws operated upon this table were fitted to do it, he came to this table and did that work, and the other workmen in the shop did the same. Another workman had repeatedly called the attention of the foreman to the condition of the gauge before plaintiff was hurt, and it had not been changed. The tooth broke out in August preceding plaintiff's injury, and plaintiff then called the foreman's attention to it, and the latter told plaintiff that cut no figure with the saw at all, that it was all right, to go ahead, and start it up. This was not contradicted. Plaintiff had, before this, received some slight scratches from another saw on his left hand, not on his right hand as the abstract says. Plaintiff testified that at the time he was injured he did not know that the fact that the gauge was out of line made the saw dangerous. These defects had existed so long that the jury were warranted in finding that the master should have known of them and remedied them. Plaintiff could see the condition of the saw, but whether he had such knowledge of the danger that his use of it was a lack of due care was a question of fact for the jury. Ill. Steel Co. v. Schymanowski, 162 Ill. 447; Union Show Case Co. v. Blindauer, 175 Ill. 325; North Chi. St. Ry. Co. v. Dudgeon, 184 Ill. 477. The master and his servant do not stand on an equality in regard to knowledge of defects and dangers in complicated machinery. Gundlach v. Schott, 192 Ill. 509. Plaintiff was justified in relying upon the assurances of the foreman that the loss of the tooth did not impair the saw, and in obeying the order to continue to use it in that condition. Ill. Steel Co. v. Wierzbicky, 206 Ill. 201. We do not

feel warranted in disturbing the conclusion of the jury that plaintiff exercised due care for his own safety under all the circumstances disclosed by the proof.

Defendant argues that plaintiff assumed the risk arising from the condition of the saw and machinery. It is to be noted that defendant's instructions were directed to the question whether plaintiff exercised due care, but that defendant did not request the court to advise the jury as to the condition under which a servant assumes the risks of his employment. The rule that the servant assumes the ordinary risks incident to the work he engages to do, presupposes that the master has exercised the care, caution and vigilance which the law requires of the master. "The servant only assumes those risks which cannot be obviated by the adoption of reasonable measures of precaution by the master." Slack v. Harris, 200 Ill. 96. Whether plaintiff assumed these risks was a question of fact for the jury.

Defendant complains of the admission of expert evidence or opinions by carpenters and machinists upon questions connected with the case. In the main we conclude these matters did not lie within the range of that common knowledge and experience which a jury is supposed to possess, and therefore the opinions of witnesses skilled in that particular trade of machinist were competent. Certainly the matters involved were not of such common knowledge to an ordinary jury that we can say the trial court erred in permitting the introduction of the opinions of skilled witnesses. Rogers on Expert Testimony, 2nd ed., sec. 6, 109. We are of opinion that the principles laid down in Gundlach v. Schott, 192 Ill. 509, are applicable here. In a single instance we think defendant's objection should have been sustained, but we do not find the error of sufficient importance in its possible effect on the result to require a reversal.

The judgment is, therefore, affirmed.

*Affirmed.*