207    593
114a  1575

# THE CONSOLIDATED COAL COMPANY OF ST. LOUIS

*v.*

## CHARLES P. FLEISCHBEIN, Admr.

*Opinion filed February 17, 1904.*

1. FELLOW-SERVANTS—*when question of fellow-servants is for jury.* The question of the existence of the relation of fellow-servants in a particular case is one of fact for the jury, under the instructions of the court as to the law, where the evidence is conflicting as to the facts upon which the alleged relation is based.

2. SAME—*what does not necessarily establish relation of fellow-servants.* That a pit-boss in a mine, in his effort to hasten delivery of coal, drives one string of cars himself, does not necessarily make him, as to such work, the fellow-servant of another driver to whom he gives an order, on reaching a certain point, to "come ahead," in obeying which order the driver is killed by colliding with a car which the pit-boss had dropped from his string.

*Consolidated Coal Co.* v. *Fleischbein*, 109 Ill. App. 509, affirmed.

207—38

Appeal from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of St. Clair county; the Hon. M. W. Schaefer, Judge, presiding.

This is an action, brought by appellee against the appellant company to recover damages for the death of appellee's intestate, Robert Bowen, which occurred while said Bowen was at work for the appellant company in its coal mine, known as the "Richland mine," on the Illinois Central railroad between the city of Belleville and the village of Freeburg in St. Clair county. The trial was before the court and a jury, resulting in a verdict in favor of appellee, as administrator, for $3000.00. Motion for new trial was overruled, and judgment was rendered upon the verdict. An appeal was taken to the Appellate Court, where the judgment has been affirmed. The present appeal is prosecuted from such judgment of affirmance.

The second amended declaration consisted of four counts. The third and fourth counts were taken from the jury by the court, and the cause was submitted on the first and second counts, to which the general issue of not guilty was pleaded. The first and second counts are substantially the same, and, as is said by the Appellate Court, "charge the appellant with negligence in the act of its manager or foreman in permitting a loaded coal box or car to be and to remain on the tramway or track in appellant's coal mine, whereby a collision occurred with certain other cars, driven by appellee's intestate, causing his death."

The facts, as stated by the Appellate Court in their opinion deciding this case, are substantially as follows:

"Through an entry leading from the bottom of the shaft to the working rooms, a distance of eleven hundred feet, was a track or tramway, over which ran the cars, used in moving the coal taken from the mine. Near the

working rooms is a switch, called a 'parting,' connect-
ing the room tracks with the main or entry track. Mules
were used in moving the cars. Robert Bowen, the de-
ceased, was an entry driver, whose duty it was to haul
the cars between the switch and the bottom of the shaft.
The room drivers brought the loaded cars from the rooms
to the switch. Peter Zink was pit-boss and mine man-
ager. Proof is made that, on the day of the injury, Zink,
the manager, came to the switch where the trains or
loads were made up for conveyance to the bottom of
the shaft, complained that the coal was not moving fast
enough, hitched a mule to a load of four cars, and started
down the entry for the shaft. From the switch there is
a sharp decline in the entry track for a distance of sev-
enty-five or one hundred feet, and, in going down, it is
necessary to 'sprag' the wheels, in order to control the
speed of the cars. Near the foot, and beyond this steeper
grade, the track is depressed or sunken three or four
inches. This is called the 'swag.' When Zink with his
load reached the swag and had removed the sprags, as
the evidence tends to prove, he called out, 'All right,
come ahead,' and moved on. Bowen, who was waiting
at the switch, immediately started with his load, and
at the swag collided with a car, left there by Zink, and
received the injuries from which he died."

WISE & MCNULTY, (R. A. HOLLAND, Jr., of counsel,)
for appellant.

M. W. BORDERS, for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the
court:

The questions in this case are nearly all questions of
fact, and are settled by the judgment of the circuit court,
and the judgment of the Appellate Court, affirming the
judgment of the circuit court. No instructions upon the
trial below were asked by the plaintiff, the present ap-

pellee. Upon the trial, the court gave twenty-one instructions on behalf of the appellant, and at its request. The court refused to give four instructions, numbered from 23 to 26, inclusive, asked by the appellant. No complaint is made of the refusal of the court to give these four instructions. Very little objection is made as to the admission or rejection of evidence by the trial court.

The main error complained of is, that the trial court refused to instruct the jury to find for the defendant. This raises the question whether there was evidence, tending to sustain the cause of action, as set up in the declaration, and if there was such evidence, the court did not err in refusing to instruct the jury to find the defendant not guilty.

The main contention on the part of counsel for appellant is that Bowen, the deceased, and Zink, the mine manager, were fellow-servants at the time Bowen was injured, and that they were both directly engaged in the same line of employment as drivers, and that Bowen was not injured, as the result of any negligent act of Zink done as a vice-principal of the company.

It was the duty of Bowen to haul the empty cars or boxes from the bottom of the shaft of the mine to a certain "parting" or switch in the main entry, and to haul the loaded boxes or cars from the parting or switch to the bottom of the shaft to be hoisted to the surface. Leading from this parting in the direction of the shaft was a very steep decline. In order to haul the loaded boxes down this decline in safety, it was necessary to use "sprags," which were pieces of wood about two feet long placed in the wheels to control the speed of the load. They would be placed in the wheels in this parting, and taken out between fifty and seventy-five feet from the point of the parting at a place designated by the witnesses as a "swag," which was in reality a depression in the track. There was also a sharp curve between this swag and the shaft, and it is admitted that a driver

could easily tell, whether a train of four cars, drawn by
a mule, was all following. The evidence tends to show
that this entry was very dusty, and that the air, travel-
ing from the bottom of the shaft towards the parting
or switch, carried the dust in the face of a driver going
towards the shaft. The evidence tends to show that the
dusty condition of the entry was well known to the pit
boss, Peter Zink, and that he had been repeatedly noti-
fied of it by the miners. One witness says that there
were "clouds of dust," and another, who was the track
layer of the mine, testified that "it was so dusty you
could hardly see anything." The evidence also tends
to show that, where four of these loaded boxes or cars
were drawn by a mule down the decline towards the
shaft, the boxes were liable to become uncoupled and to
be left in the entry. It appears, however, that where
a train of four box-cars is in motion, one of the cars
cannot become uncoupled without a jar or jam, so that
the driver, if he loses a box, will know of it at the time
when it happens.

The injury occurred on April 21, 1902, about four
o'clock in the afternoon. At that time Zink, the pit-boss,
went to the deceased Bowen at the parting or switch,
and complained that the coal was not coming out fast
enough. The pit-boss then took a mule, which is said
to have been a "spoiled" mule—that is to say, a mule
which had been whipped or otherwise maltreated in such
a way that it would not haul as large a number of loaded
cars as it was able to do—and with this mule, hitched to
four boxes or cars, started to haul them from the part-
ing or switch to the bottom where the shaft was. When
Zink, the pit-boss, reached the swag, he pulled his sprags,
and then directed Bowen to start with his load. The
evidence tends to show that the pit-boss called to Bowen,
and said: "All right, come ahead." The pit-boss testifies
that he gave no such direction to Bowen, but was merely
talking to the mule, but his evidence upon this subject is

somewhat indefinite, as he states that he does not know exactly whether he made use of these words, or not. There is other testimony, however, tending to show that they were used, and that they were intended for Bowen.

As has been said, it sometimes happened that one of the cars, drawn by the mule towards the shaft, would become uncoupled, and the evidence is quite clear that, in this case, when Zink went with his load towards the shaft, one of his cars did become uncoupled, and was upon the track in the main entry. Zink admits in his testimony that he lost one of his cars, but did not know where or at what point it became uncoupled. When Zink uttered the words: "All right, come ahead," Bowen started down the hill with his load, driving the mule, which hauled the loaded cars. We discover no evidence in the record, tending to show that he was not in the exercise of due care for his own safety. It appears that his load was carefully "spragged," that is, blocked, so as not to proceed with too great a speed. When near the swag or depression in the track or entry, Bowen came in contact with, and struck, the box or car of coal which Zink, the pit-boss, had left upon the track in the entry. The evidence tends to show that the mule, which was in front of Bowen, turned to the side, and escaped injury, while Bowen was crushed between the forward car of the train, which his mule was hauling, and the box-car, which had been left upon the track by Zink, the pit-boss. His injuries were so serious, that he died in a few days after the accident. The evidence tends to show that, after passing beyond the swag or low point, there is a down-grade for a considerable distance beyond the sharp curve, and the momentum gained in going down the incline was so great, that the impact of the collision caused the car, left on the track by Zink, to move forward and around the curve.

The negligence charged is, that the pit-boss left a loaded coal box in a dark, dusty entry on a down-grade,

and then ordered Bowen, who did not know that such loaded coal box had been left upon the track in the entry, to proceed down the hill with his loaded cars. It is not denied that Zink was the pit-boss, and a vice-principal of the company. Such a boss in a coal mine is the company, so far as employes are concerned. In this case Zink testifies as follows: "I was pit-boss at Richland mine when Bowen was hurt. I lost a car on the trip preceding Bowen in going out. I can't say where I lost that car. * * * I had full supervision of the mine and of the men, and the power to discharge and employ the men, and the power to order and direct Bowen, and I was the pit-boss and acting as such that day, and had charge of Bowen and the other men, and could give them orders."

It is not denied that the position of Zink, as pit-boss, was such as he states it to be in his testimony, and it is conceded by counsel for appellant that, if the negligent act, of which he was guilty, was performed, while he was acting as the vice-principal of the company, the company would be liable.

But the contention of appellant is that, when Zink, the pit-boss, undertook to drive a mule, hauling four loaded cars from the parting or switch to the bottom of the shaft, he abdicated his position of vice-principal, and was engaged as a driver, just as Bowen was engaged, and, therefore, that he and Bowen were fellow-servants. If the negligent act of Zink, which caused the accident, was the act of a fellow-servant of Bowen, then the company would not be liable. The fact, that Zink did not abdicate his position as superintendent, is apparent from the further fact, that he ordered Bowen to come ahead with his load, and thereby still assumed to control the action of Bowen.

In *Chicago and Alton Railroad Co.* v. *May*, 108 Ill. 288, we said (p. 298): "The mere fact, that one of a number of servants, who are in the habit of working together in the same line of employment for a common master, has

power to control and direct the actions of the others with respect to such employment, will not of itself render the master liable for the negligence of the governing servant, resulting in an injury to one of the others, without regard to other circumstances. On the other hand, the mere fact that the servant exercising such authority, sometimes, or generally, labors with the others as a common hand, will not of itself exonerate the master from liability for the former's negligence in the exercise of his authority over the others. Every case, in this respect, must depend upon its own circumstances."

The first count of the declaration avers that, "while in the performance of his said work in hauling a load of coal cars from said parting to the bottom of the shaft, and while acting under the orders of said mine manager, and in the exercise of reasonable and ordinary care and caution for his own safety, said Robert Bowen ran against and collided with said loaded coal car, carelessly and negligently left standing in said entry at said place by the said mine manager of defendant, and which said box could not be seen by said Robert Bowen on account of the dust in said entry."

In *Norton Bros.* v. *Nadebok,* 190 Ill. 595, we said (p. 600): "When the appellee was ordered by his superior servant to put his hand into the machine and take out the 'catch,' in the absence of any warning or notice he had the right to assume that his superior, who gave the order, would not by his own negligence make the act, which he had commanded him to do, and which he was bound to obey, unsafe." So, in the case at bar, when Bowen was ordered by his superior to "come ahead," "in the absence of any warning or notice he had the right to assume that his superior, who gave the order, would not by his own negligence make the act, which he had commanded him to do, and which he was bound to obey, unsafe.".

The commands, which a vice-principal, who is a direct representative of the company, gives within the

scope of his authority, are the commands of the company, and, if such commands are not unreasonable, those under his charge are bound to obey at the peril of losing their situations. Hence, the company will be held responsible for the consequences. (*Illinois Steel Co.* v. *Schymanowski*, 162 Ill. 447.) The mere fact, that Bowen and Zink were working together in hauling coal from the parting to the bottom of the shaft, would not necessarily relieve appellant from liability. In *Pittsburg Bridge Co.* v. *Walker*, 170 Ill. 550, this court, quoting from *Chicago and Alton Railroad Co.* v. *May*, *supra*, said (p. 554): "The mere fact, that the servant, exercising such authority, sometimes, or generally, labors with the others as a common hand, will not of itself exonerate the master from liability for the former's negligence in the exercise of his authority over the others. * * * When the negligent act complained of arises out of, and is the direct result of, the exercise of the authority conferred upon him by the master over his co-laborers, the master will be liable. In such case, he is not the fellow-servant of those under his charge with respect to the exercise of such power, for no one but himself in the case supposed, is clothed with authority to command the others."

In *Consolidated Coal Co.* v. *Gruber*, 188 Ill. 584, we said (p. 588): "If the action was taken by him in the discharge of his duties as vice-principal, his position was one of superiority, and not that of a fellow-laborer. The fact, that, in the discharge of his duties as assistant mine manager, he engaged temporarily in work, usually performed by Nagle, would not justify the declaration, as matter of law, that he became a fellow-servant of the appellee."

In the case at bar, the pit-boss was displeased that the coal was not taken out, or taken up, fast enough, and proceeded himself to take a load of coal down to the shaft quickly and rapidly, and ordered Bowen, whom he preceded, to come along after him as soon as he reached

the "swag." His acts, as well as his words, were a part of his effort to hurry along the work, and increase the amount of coal taken out. He was acting in all respects, not merely as fellow-laborer or fellow-servant, but as a superintendent, directing the conduct of Bowen, so as to make the efforts of the latter speedier and more efficient. We cannot see that there was anything in the facts of the case, which indicated any abdication of his authority by Zink, so as to make him a mere fellow-servant of Bowen.

But, the question whether the relation of fellow-servant exists in a given case is one for the jury, unless the facts, admitted or proved beyond dispute, show the existence of the relation within the definition of fellow-servant, as given by the court, in which case it becomes a question of law. (*Hartley* v. *Chicago and Alton Railroad Co.* 197 Ill. 440.) In other words, where the facts are conceded, or where there is no dispute whatever as to the facts, and they show beyond question that the relation of fellow-servant exists, then the question may become one of law. But here, the facts are not conceded, but are sharply contested.

The question, whether or not Zink and Bowen were fellow-servants, was submitted to the jury under the instructions of the court, asked by the appellant itself, and that question is finally settled by the judgments of the lower courts. (*Slack* v. *Harris*, 200 Ill. 96.) In instruction 7, given for the appellant, the court told the jury that "it is necessary for the plaintiff to prove to you that the mine manager at the time the deceased was injured was not a fellow-servant of the deceased."

In the tenth instruction, given for the appellant, the jury were instructed as follows: "And it is not enough to prove that the car was left in the entry by the mine manager, but, before the plaintiff is entitled to recover under this count, he must prove that the car was negligently left by said mine manager; that said mine man-

ager was not, at that time, a fellow-servant within the meaning of the instructions given you, and that the deceased was using due care for his safety to prevent this collision; and, if he has failed to prove all and each of these things, he cannot recover." By this instruction and others, asked by the appellant, the question, whether or not the pit-boss and the deceased were fellow-servants, was left to the jury to be determined by them as a question of fact. They found against the appellant upon this question of fact under the instructions given them, and so far as we are concerned, the question is settled.

We are, therefore, of the opinion that the trial court committed no error in refusing to instruct the jury to find the defendant not guilty, inasmuch as the contention of appellant's counsel, that such instruction should have been given, is based upon the further contention, that the relation of fellow-servants existed between the mine boss and the deceased, as a matter of law. Having been a question of fact, and not a question of law, it was properly submitted to the jury.

Counsel for appellant discuss in their brief certain questions of fact, such as whether there was a collision between Bowen's train and the car left upon the track by the pit-boss, and whether the deceased was guilty of such contributory negligence as should prevent a recovery, and whether or not the entry was dusty, and whether or not there was room at the side of the car at the place where deceased was hurt to have enabled him to escape injury if there was a car upon the track. All these were questions of fact, and were properly submitted to the jury under the instructions, and are settled by the judgments of the lower courts.

We see no reason for reversing the judgment of the Appellate Court, and accordingly that judgment is affirmed.                                    *Judgment affirmed.*