## Himrod Coal Company v. Harvey Clingan.

1. SAFE PASSAGEWAY—*duty of mine owner with respect to.* It is the duty of the master to use ordinary care to provide a reasonably safe place for his servant to work and to use in going to and from his work; such obligation does not impose upon a mine owner the absolute duty to afford to a miner a reasonably safe passageway to and from his work.

2. RULE—*what does not deprive mine owner of protection of.* It is not sufficient to deprive a mine owner of the protection of a rule which he has promulgated for the benefit of his servants that it should have been knowingly and habitually disregarded; it must appear that such master either had actual knowledge of its violation or that by the exercise of ordinary care he must have known of such violation.

3. INSTRUCTIONS—*must not submit cause of action at variance with declaration.* Instructions must be based upon the theories advanced by the pleadings and every instruction must be supported by some evidence.

4. INSTRUCTION—*should not assume facts in dispute.* An instruction should not assume facts in dispute.

5. INSTRUCTION—*when, containing abstract proposition of law, is improper.* An instruction which merely contains an abstract proposition of law not by its terms applicable to the facts in the case, where misleading, is improper.

6. FELLOW-SERVANTS—*when instruction upon, is erroneous.* The question as to whether or not the relation of fellow-servants exists in a given case is always one for the jury unless the facts admitted or proven beyond dispute show the existence of the relation within the established rule, and an instruction which fails to recognize this rule and tells the jury that a particular servant is, as a matter of law, a fellow-servant of the plaintiff, is erroneous.

7. CREDIBILITY OF WITNESSES—*when instruction upon, is erroneous.* An instruction upon this subject which tells the jury that the testimony of one credible witness may be entitled to greater weight than the testimony of many others, if they believe from the evidence that such other witnesses had knowingly testified untruthfully, is erroneous where it omits the essential qualification that to warrant the jury in discrediting witnesses and in disregarding their testimony, they must believe that such witnesses have wilfully testified falsely or untruthfully as to some material point in the case; and it is further erroneous where it fails to tell the jury that statements of witnesses may be corroborated by facts and circumstances in evidence.

8. CREDIBILITY OF WITNESSES—*when instruction upon, is erroneous.* An instruction invades the province of the jury and is erroneous where it tells the jury that the testimony of witnesses having superior opportunities for knowing what took place, etc., is entitled to greater weight than those whose opportunities for such knowledge were not so great.

Action on the case for personal injuries. Appeal from the Circuit Court of Vermilion County; the Hon. MORTON W. THOMPSON, Judge, presiding. Heard in this c. urt at the November term, 1903. Reversed and remanded. Opinion filed June 28, 1904.

H. M. STEELY, for appellant.

PENWELL & LINDLEY and HENRY E. JACOBS, for appellee.

MR. JUSTICE PUTERBAUGH delivered the opinion of the court.

This action was brought by appellee, a coal miner, to recover for injuries sustained by him while in the employ of appellant. The trial in the Circuit Court resulted in a judgment for the plaintiff for $3,000, to reverse which the defendant appeals.

The declaration, in substance, alleges that in the operation of its mine, the defendant had constructed a double track leading along the entry in which the accident occurred, which converged, and ended in a single track at either end; that where such double track converged there was a switch, which, when in working order, caused all cars running from the single track past said switch toward the shaft, to run on the left-hand track of said double track, which was known as the " loaded " track; that no cars were allowed to run past said switch on to the right track, which was known as the " empty " track and was used for conveying empty cars from the shaft, past the switch to the single track at the other end and thence to various places in the mine; that said empty track was with the knowledge, consent and direction of defendant, also used by the miners as a passageway to their various places of employment, and for no other purpose during day working hours; that it was the duty of defendant to keep said switch in repair and so adjusted and connected as to prevent cars of coal from running from said single track upon the double track, and to warn plaintiff of any defective or disconnected condition of said switch, or to employ a competent servant to look after the same and keep it adjusted and warn plaintiff as aforesaid; that defendant on May 29, 1902, negligently

permitted said switch to become and remain disconnected, allowing a "trip" of loaded cars to run from said single track on to the empty track while plaintiff was walking thereon on his way to work; that when plaintiff was at a distance of twenty-five feet from said switch said trip of cars ran on to said empty track against plaintiff, injuring him, etc.

The evidence disclosed that tracks were located in one of the main entries substantially as averred in the declaration; that from the shaft to what was known as the sixteenth entry, the cars were hauled by cable; that from that point to the switch referred to, they were hauled by a "spike-team" of mules, and that several cars when coupled together, constituted a train or "trip." The evidence further shows that the switch in question was what is known as an automatic switch, that is, the switch points are held to one side by a spring so that the main track is a solid track, and càn be used in either direction, without touching the switch, and a car being taken from the switch on to the main track will run through the switch, the flanges of the wheels throwing the points over and allowing them to pass through, and after the wheels have passed, the points spring back or are pulled back into place by the spring, so that the switch is closed for the main track again; that on the morning of the accident, by some means, the chain, which connected this spring to the bar under the rails fastened to the switch points, became unhooked, so that when a car was taken from the switch out on to the main track through these points they were not pulled back into place but remained in the position in which the wheels left them, which would cause a car coming along the main track toward the switch points to run off the main track in on the switch.

It further appears from the evidence that appellee had been employed in the "mine cutting entry" for several months prior to the accident which caused his injury. He reached the place in which he was working by walking and riding through the main entry, through which all coal

mined was hauled, and which was used by all employees as a passageway to and from their work in various parts of the mine. On the morning of the accident, shortly after seven o'clock, after riding a portion of the way, he started through the main entry to his place of work, walking on the switch track upon which the empty cars were usually switched from the main track. He testified that when about ten feet from the switch he noticed a trip of loaded cars coming toward him on the track upon which he was walking; that it was then about seven feet from him; that he turned and ran, but had only taken two or three steps when he was struck and injured.

It is not controverted that the latch of the switch was unhooked, whereby the loaded trip left the main track and took the switch track. Plaintiff's evidence tended to prove that theretofore the main track at that point had been used exclusively for the conveying of loaded cars from the interior of the mine to the shaft, and that the switch track, during the day, was used only to convey empty cars from the shaft to the interior of the mine; that the employees of the mine had been permitted to and were in the habit of using the switch track in going to their work; that the timber men who worked during the night frequently used the switch track and unhooked the latch for their own convenience, necessitating its rehooking before the work of hauling out the coal was begun in the morning; that at a point about forty feet from the switch a boy was employed as a "trapper," whose duties were, not only to watch the drivers of cars to prevent collisions, but to examine the latch each morning and see that it was hooked up; that shortly before the accident a new trapper named Nelk was employed, but that he was not instructed as to this particular duty, nor was there any one else who had been instructed to or did perform the duty. On the morning in question and about fifteen minutes prior to the accident the first trip of loaded cars was taken out by one Spickard, who testified that he found the switch open and that his cars took the empty track, but that he left the latch un-

hooked, as it was not his business to look after the switches. The evidence adduced by appellant tended to prove that two men, Topham and Newby, were employed by appellant as track-layers, whose duties required them to look after the switches and that it was no part of the duties of the trappers to do so. It further appears from the evidence that there was posted on the wall near the place of the accident and at a number of other places in the mine printed notices notifying employees, among other things, that between 7 o'clock A. M. and 3:30 A. M. they must keep off haulage roads, and that violation of the warning "was dangerous to the guilty as well as all others."

The theory upon which appellee relied for a recovery, as stated in the argument filed by counsel in this court, is that the appellant company was negligent in not having some one to attend the latch controlling the switch, whereby it was left unhooked. Counsel for appellant assigns and urges as grounds for the reversal of the judgment, that a preponderance of the evidence fails to show that appellant knew that the latch was unhooked or that it had been unhooked for such length of time that appellant, in the exercise of due care, would have known it; that appellee was not at the time of the accident in the exercise of due care for his own safety; that the court erred in its rulings upon instructions, as well as a number of other grounds.

Inasmuch as the judgment must be reversed and remanded for the reason that the trial court improperly instructed the jury, we will refrain from discussing the other grounds assigned, and, for the same reason, it will be unnecessary for us to determine the facts or the merits of the case.

The evidence as to the facts involved was conflicting and it was therefore imperative that the jury should have been accurately instructed as to the law applicable to the case.

At the request of appellee, the court gave to the jury the following instructions:

" 3.    The court instructs the jury that it was the duty of the defendant in this case to afford the plaintiff a reasonably safe passage to and from his work, for travel.

Himrod Coal Co. v. Clingan.

"8.   The court instructs the jury that if they believe from a preponderance of the evidence in this case, that the defendant made and posted notice of certain rules that had been adopted by the company for the safety of its employees; and if the jury further find from a preponderance of the evidence that the rules were *knowingly* habitually violated, and by reason of such violation the plaintiff in this case was injured, that in such state of the proofs the defendant cannot shield itself from liability under the 'fellow-servant rule.'

"9.   The court instructs the jury as a matter of law, that one employed in a service is not bound to investigate and find out at his peril whether the common master has used reasonable care in the selection of those already employed in the same branch of service; but on the contrary he is warranted in assuming that his employer has discharged his duty in that respect, and until notice to the contrary is brought home to such servant, he may act upon that supposition.

"11.   If you find the defendant guilty from the evidence submitted to you and the instructions of the court, and you believe from the evidence that the plaintiff has suffered damages thereby, you should in estimating such damages compensate the plaintiff for any necessary expense incurred by him in furnishing medical attendance, care and nursing on account of his injuries, if any, shown by the evidence; and in addition thereto compensate him for the value of his loss of services he has been rendered incapable of performing, and to return your verdict therefor.

"13.   The court instructs the jury that the servant employed to put machinery in proper order is not the fellow-servant of one whose duty it is to use it.

"14.   The court instructs the jury that the master is bound to use care, skill and prudence in selecting and maintaining machinery and appliances, and for a negligent omission of this duty he is answerable to the servant injured by the omission.   This duty on the part of the master is one that he cannot rid himself of by casting it upon an agent, officer or servant employed by him.   Where the duty is one owing by the master, and he entrusts its performance to an agent, the agent's negligence is that of the master. In authorizing an agent to perform such act, the principal is in legal contemplation himself acting when the agent acts, for he who acts by an agent acts by himself.   The rule which absolves the master from liability for the negli-

gence of the fellow-servant has no application whatever where the agent stands in the master's place.

"16. The court instructs you that the testimony of one credible witness may be entitled to more weight than the testimony of many others, if, as to those other witnesses, you have reason to believe, and do believe, from the evidence and all facts before you, that such other witnesses have knowingly testified untruthfully, and are not corroborated by other credible witnesses, or by circumstances proved in the case.

"17. The court instructs the jury that the credit of a witness depends upon two things; his ability to know what occurred and his disposition for telling the truth as to the occurrence. The statement of a witness having superior opportunities for knowing what took place and superior intelligence and memory, other things being equal, is en titled to the greater weight before the jury.

"20. The court instructs the jury that when witnesses are otherwise equally credible, and their testimony otherwise entitled to equal weight, greater weight and credit should be given those whose means of information were superior, also to those who swear affirmatively to a fact, rather than to those who swear negatively, or to a want of knowledge or want of recollection."

We are of opinion that the foregoing instructions incorrectly stated the law as applicable to the facts in the case, and should not have been given to the jury.

Instruction number 3 in effect told the jury that it was the absolute duty of the defendant to afford the plaintiff a reasonably safe passageway to and from his work. This is not the law. The instruction states the duty of the master too strictly. It is the duty of the master to use ordinary care only to provide a reasonably safe place for his servant to work, and to use in going to and from his work. Metcalf v. Nystedt, 102 App. 71; L. E. & W. R. R. Co. v. Wilson, 189 Ill. 89.

Instruction number 8 told the jury, in substance, that although the defendant had posted rules for the safety of its employees, yet if such rules were knowingly and habitually violated, then it could not shield itself from liability under the fellow-servant rule. It is not sufficient to deprive the master of the protection of a rule that it should have been

knowingly and habitually violated. The master must either have had actual knowledge, or it must appear that by the exercise of ordinary care he would have known of such violations. Mining Co. v. Dolph, 101 Ill. App. 172; C. & W. I. R. R. Co. v. Flynn, 154 Ill. 448. The only rule in evidence was one requiring employees to keep off the haulage ways during working hours. It had nothing to do with the hooking or unhooking of the switch, nor with the fellow-servant rule. The instruction was necessarily misleading.

There is no averment in the declaration upon which to base the ninth instruction, nor does it appear from the evidence that the defendant employed or retained in its employ an incompetent or unskillful person. The instruction therefore submitted to the jury a cause of action at variance with that set out in the declaration. An instruction must be upon a theory advanced by the pleadings, and which there is some evidence to support. Rosenkrans v. Barker, 115 Ill. 332; Penna. Co. v. Marshall, 119 Ill. 399; C., C., C. & St. L. Ry. Co. v. Hall, 70 App. 429.

The eleventh is erroneous for the reason that it assumed that there had been a loss of services and an inability to perform them.

Number 13 invades the province of the jury in that it states as a matter of law, a servant employed to put machinery in order is not a fellow-servant of one whose duty it is to use it. The question whether the relation of fellow-servants exists in a given case is always one for the jury unless the facts admitted or proven beyond dispute show the existence of the relation within the established rule. Hartley v. C. & A. R. R. Co., 197 Ill. 440; Con. Coal Co. v. Fleischbein, 207 Ill. 593. It is only when the evidence is such that all reasonable minds must reach the conclusion that the relation of fellow-servants exists between employees of the same master, that the court can declare them to be fellow-servants. Duffy v. Kivilin, 195 Ill. 630. The instruction is also but an abstract proposition of law and not by its terms applicable to the facts in the case and is therefore

misleading. Instruction number 14 is subject to the same criticism. Although abstract in form it may be inferred therefrom that appellant was negligent in the selection and maintenance of the switch and appliances. There is no allegation in the declaration to that effect and no evidence tending to prove improper construction of the switch nor that the same had become defective or out of repair. The instruction was not applicable to the facts and was calculated to mislead the jury. An instruction directing the attention of the jury to an element of liability not shown by the pleadings or evidence in the case is calculated to mislead and is erroneous. It is not proper to direct the attention of the jury to matters not in issue. C. & A. R. R. Co. v. Robinson, 106 Ill. 142.

Instruction number 16 told the jury that the testimony of one credible witness might be entitled to greater weight than the testimony of many others, if they believed from the evidence that such other witnesses had knowingly testified untruthfully. It omits the essential qualifications that to warrant the jury in discrediting witnesses and disregarding their testimony, they must believe that such witnesses have wilfully testified falsely or untruthfully as to some material point in the case. " A witness cannot be discredited simply on the ground of an erroneous statement. It is only where the statements of a witness are wilfully and corruptly false in regard to material facts, that the jury are authorized to discredit his entire testimony." Matthews v. Granger, 196 Ill. 164. The instruction is also erroneous in that it requires the corroboration of a discredited witness by other credible *witnesses*. We do not understand that it is essential that the discredited witness be corroborated by several witnesses. Appellant's sixteenth given instruction, while it, in other respects, correctly states the rule, also is defective in this particular.

Instruction number 17 told the jury that the credit of a witness depended upon his ability to know what occurred and his disposition to tell the truth, and that the statement of a witness having superior opportunities for knowing what

took place and superior intelligence and memory, other things being equal, was entitled to greater weight before the jury. Instruction number 20 told the jury that when witnesses were otherwise equally credible, greater weight should be given to those whose means of information were superior, and to those who swore affirmatively to a fact rather than to those who swore negatively. These instructions should have been refused. "It is the peculiar province of the jury, where the evidence is conflicting, to properly weigh all the evidence and determine for themselves what the weight of evidence may be. We do not understand that it is the province of the court to tell the jury which is the strongest, or which is of greater force." L., N. A. & C. Ry. Co. v. Shires, 108 Ill. 617. "It is obvious error for the court to announce to the jury what is the better evidence in a case, or what the jury may so regard. It is the province of the jury to say to what evidence they will attach the greater weight in case of a conflict, and with this right or privilege the court should not interfere." C. & A. R. R. Co. v. Robinson, 106 Ill. 142.

A number of other instructions were given to the jury at the instance of appellee, of which we do not approve, but which we will not attempt to analyze or criticise in detail.

Complaint is made of the modification and refusal of several instructions offered by appellant. We have examined the same carefully and are of opinion that the rulings of the court thereon were proper, except as to the 11th modified instruction, which as modified, states the duty of appellant too strictly.

For the errors in instructions as above indicated, the judgment must be reversed and the cause remanded.

*Reversed and remanded.*